### Lynanne M. SPAGNOLETTI

v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted Oct. 4, 2013.

Decided Oct. 31, 2013.

Publication Ordered March 21, 2014.

---

Philip M. Bricknell, Assistant Counsel, Harrisburg, for appellant.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

In this appeal, the Department of Transportation, Bureau of Driver Licensing (PennDOT) asks whether the Court of Common Pleas of Cumberland County (trial court) erred in sustaining the appeal of Lynanne M. Spagnoletti (Licensee) from the five-year revocation of her operating privilege under Section 1542 of the Vehicle Code, 75 Pa.C.S. § 1542 (relating to revocation of habitual offender's license). PennDOT contends the trial court abused its discretion in sustaining Licensee's appeal where Licensee had three convictions for driving under the influence (DUI) in less than five years rendering her a "habitual offender" as defined in Section 1542 of the Vehicle Code. Upon review, we are constrained to reverse.

In May 2012, PennDOT notified Licensee of the revocation of her operating privilege for a period of five years based on her designation as a habitual offender as a result of her third DUI conviction. Licensee filed an appeal with the trial court. Hearings ensued.

At hearing, PennDOT produced a packet of certified documents, which included the reports of Licensee's three DUI convictions, Licensee's certified driving history, and PennDOT's notice of revocation upon Licensee's third conviction. PennDOT then rested. Licensee, representing herself, testified on her own behalf. After Licensee's testimony, the trial court continued the hearing so that it could receive testimony from counsel in the underlying criminal DUI cases, "to determine the specific agreement, if any, that gave rise to [PennDOT's] designating [Licensee] a habitual offender...." Reproduced Record (R.R.) at 38a.

At a second hearing, the attorney whose office represented Licensee in connection with two of her three DUIs testified. At the conclusion of the hearing, the trial entered an order from the bench, which stated: "the Court finds that the District Attorney's office plea offers did not address the habitual offender[ ] designation and are not binding on [PennDOT]. Fol-

lowing a review of all of the testimony, the appeal is sustained, and the suspension that is the subject of this appeal shall be rescinded." R.R. at 60a. PennDOT appealed, and the trial court ordered it to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which it did. The trial court then issued an opinion in support of its decision pursuant to Pa.R.A.P. 1925(a).

In its Pa.R.A.P. 1925(a) opinion, the trial court made the following findings. Licensee's certified driving record "shows that on 30 September 2011, the first DUI General Impairment conviction was entered in Cumberland County, arising out of a 3 July 2011 violation[.]" Tr. Ct., Slip Op., 4/8/13, Finding of Fact (F.F.) No. 12. "This was followed by a second DUI Controlled Substances conviction in York County, with a one-year suspension effective 14 February 2012, for a violation on 8 May 2011[.]" F.F. No. 13. Finally, the record "shows a third DUI General Impairment conviction on 10 April 2012 in Cumberland County, arising out of a violation on 28 June 2011[.]" F.F. No. 14.

Licensee acknowledged that she did in fact receive three DUIs in six weeks. "These arrests occurred following Licensee being 'held hostage and raped in York County,' wherein after she was 'put on seven different medications as a coping mechanism.'" F.F. No. 5 (citing Tr. Ct. Hearing, Notes of Testimony (N.T.), 12/12/12, at 7).

Jason Eric Zacek pled guilty to terroristic threats with the intent to terrorize another, simple assault, providing false identification to law enforcement officers and two counts of unlawful restraint—serious bodily injury, in connection with an April 2011 assault on Licensee.[1]

1. The sworn facts from the affidavit of probable cause regarding that matter are as follows:

On 04/6/2011 at 1607 hrs. I was dispatched to the Motel 6 room # 320 in reference to a welfare check on [Licensee]; York City Police (OFF. Knarr) wanted our department to check her status because she gave a PNC bank teller a note in York City stating she needed help and wanted the police to report a domestic disturbance with a gentleman she met on line. I responded on scene and knocked loudly at room # 320 numerous times. I announced myself as OFF. Greco NYCRPD. The room/door was locked and no one answered. I had the management staff obtain a key and entry was made. No one was inside and I found no problems. While closing the door I was approached by a white female, a young white female child, and a white male. The male saw police and suspiciously walked away and tried to flee the scene. The male was detained and brought back to room # 320. The female was identified as the woman that gave the note to the bank teller. The woman [Licensee] stated she was *assaulted* and threatened by the male we had detained. I observed the female had visible black and blue marks/abrasions to both her upper arm areas. The female gave a positive identification on scene of the accused. I [M]irandized the accused and double locked the handcuffs. While in custody the male had no form of identification. The male gave the name of Jason Eric Za[c]ek D.O.B 05–05–1975. No record was found in Pa or any other surrounding states. In speaking with the victim she advised a physical altercation occurred at the Super 8/Arsenal Rd., on 04–03–2011 at approx., 2300 hrs. While the physical domestic occurred the accused stated he would kill her and cut off her head somewhere in the mountains. The accused also stated he would bury her in the mountains so that no one could find the body. The victim stated the accused pushed, hit, and shoved her which caused the black and blue marks/abrasions to her both upper arm areas. I ran a Criminal History check on the accused with the name and D.O.B. he provided but no record was found in Pa or surrounding states. I believe the accused is giving false information to the police during an investigation of Terroristic Threats, Simple Assault, and Harassment. The accused was booked as John Doe due to the situation at hand. The accused also took the

Licensee's defense counsel in the two DUI matters that occurred in Cumberland County "appeared and described the medical situation as it was presented to the District Attorney's Office." N.T., 1/10/13, at 9–11. "The Public Defender's Office represented Licensee in both cases, which resulted in two (2) Section 3802(a) (1) General Impairment pleas[.]" F.F. No. 3. In light of the mitigating circumstances, Licensee was allowed to plead to "General Impairment," offenses that would allow her to avoid a license suspension. F.F. No. 8. "Defense counsel acknowledged the focus of her representation was on mitigating any jail time and license suspension that would arise out of these convictions[.]" F.F. No. 10. "Defense counsel candidly admits that the discussion of the collateral consequences of the criminal conviction, specifically the habitual offender designation, was not discussed with her client nor the District Attorney." F.F. No. 11.

 At the outset of its discussion, the trial court stated that under Section 1542 of the Vehicle Code, the Commonwealth is required to revoke the operating privilege of any person whose driving record meets the criteria defining a habitual offender. Revocation is mandatory, not discretionary. *Johnson v. Commonwealth,* 68 Pa.Cmwlth. 384, 449 A.2d 121 (1982). Further, our Supreme Court unequivocally holds that based on the language of Section 1542, PennDOT lacks discretion over whether to revoke an individual's operating license. Given three convictions in the prescribed time period, revocation is required. *Commonwealth v. Bursick,* 526 Pa. 6, 584 A.2d 291 (1990).

> victims cell phone battery out of her phone so that she could not make any calls to 911 for police assistance. Based on the visible injuries on scene and her statements I charged the accused with the appropriate crimes. The victim was photographed by

Nevertheless, the trial court observed that citations for underage drinking contain a specific warning regarding the consequence of a license suspension based on our Supreme Court's decision in *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994). Similarly, in the context of a refusal to submit to chemical testing, specific warnings are required. See Section 1547(b)(2) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(2). The trial court then explained:

> In the wake of certain United States Supreme Court rulings, our Supreme Court has recently readdressed the distinction between punitive and collateral consequences of a criminal conviction, and determined that the trial court must ascertain whether the consequence is 'so punitive either in purpose of effect as to negate the intention to deem it civil.' [*Commonwealth v. Abraham,* 619 Pa. 293, 62 A.3d 343, 350 (2012) ]. The Supreme Court went on to outline this distinction and specifically cited [*Duffey* ], which dealt with a ninety (90) day license suspension arising out of an offense under the Crimes Code.
>
> The applicable case law that addresses license suspension consequences as civil in nature has been with us since the 1990's, but is still relied upon in meting out suspensions....
>
> Being decades old, the well settled case law needs to be revisited in light of changes in the law in those intervening years.... [T]here is a dearth of statutory or case law for any equitable notice prior to the imposition of the habitual offender designation and its corresponding, significantly longer suspension.

> Cpl. Migitulski on scene. I supplied information to the victim on how to obtain a P.F.A.

Tr. Ct., Slip Op., 4/8/13, Finding of Fact No. 2 (quoting Docket CP–67–CR–05413–2011, Affidavit of Probable Cause (York Cnty.)).

The legislative intent in a license suspension has been both a criminal punishment and a civil consequence. When Section 1542 [of the Vehicle Code] was originally enacted, it was designed to be a civil consequence. However, since license suspensions have a punitive aspect within the sentencing matrix, any imposition includes components of restraint, retribution, and deterrence for this already criminal act. What had been the distinguishing [*Abraham*] factor, *scienter*, has now taken this suspension from civil to criminal. Prior to [*Duffey*], awareness of the statutory civil suspension was not at issue; however, the last twenty years of legislative and court actions now mandates cognizance prior to the imposition of a civil license sanction.

The notice procedures now involved with other license suspensions since [*Duffey*] combined with the lack of any notice requirement in a habitual offender situation, leads to the logical conclusion that the disparate treatment makes the mandatory notice suspensions clearly civil, while suspensions without warning are punitive and thus criminal. Through lack of pace with other civil license suspensions, Section 1542 has moved under the rubric of *Padilla v. Kentucky*, 559 U.S. 356 [130 S.Ct. 1473, 176 L.Ed.2d 284] (2010). As such, before such punitive consequences can be enforced, as they are a direct consequence of a plea where the suspension is mandatory, it must be explained to a pleading defendant in order to constitute a knowing and informed decision. Under this analysis, the rescission of the five year license suspension is proper.

In the alternative, our Supreme Court's direction in [*Duffey*] that prior notice be provided in summary license suspensions, together with the legislatively mandated notice prior to civil license suspension in situations such as chemical test refusal, indicates that notice of a suspension is now a predicate to any civil license suspension. There being no prior notice in this case compels that the designation of habitual offender be prohibited from enforcement....

Tr. Ct., Slip Op. at 7–8. Thus, the trial court determined the habitual offender designation requires an informed decision following full and adequate legal representation prior to a third offense DUI plea within five years. Alternatively, prior to the imposition of a habitual offender designation, the Commonwealth must show prior notice of the civil consequences. As such, the trial court opined, it properly sustained Licensee's appeal, and this Court should affirm rescission of the suspension. This matter is now before us for disposition.[2]

On appeal,[3] PennDOT argues it correctly revoked Licensee's operating privilege. Specifically, PennDOT asserts Licensee was convicted of three DUIs within five years making her a "habitual offender" as defined in the Vehicle Code. While PennDOT is sympathetic toward Licensee as a victim of crime, the Vehicle Code nonetheless requires it to revoke her license for five years because she fits the definition of a habitual offender. PennDOT maintains the trial court agreed, stating: "Technical-

---

**2.** This Court previously precluded Licensee from filing a brief based on her failure to do so in accordance with the briefing schedule issued by this Court.

**3.** Our review is limited to determining whether the trial court's findings were supported by competent evidence, whether errors of law were committed, or whether the trial court's determinations demonstrated a manifest abuse of discretion. *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

ly speaking, the Commonwealth's habitual offender designation is accurate and the [revocation] should have been upheld." R.R. at 98a. Regardless of circumstance, PennDOT contends, neither it nor the trial court has discretion to determine if a habitual offender's license should be revoked. PennDOT argues the trial court abused its discretion when it overrode the law and sustained Licensee's appeal.

PennDOT asserts the trial court's reasoning for sustaining Licensee's appeal is inconsistent with the Vehicle Code and relevant, precedential case law. The habitual offender revocation is a collateral civil consequence of criminal convictions because it is a civil requirement over which a sentencing judge has no control. Thus, there is no requirement for a warning of the consequence of pleading guilty to a third DUI violation within five years. *See Duffey; Abraham.*

PennDOT also maintains the trial court's examples of situations where warnings of possible license suspensions are given do not support the trial court's position that warnings are required for all license suspensions, including the five-year revocation based on a habitual offender designation. To that end, this Court directly holds that a failure to warn a licensee that pleading guilty or entering a pre-adjudication program will result in a habitual offender designation does not allow for rescission of the five-year license revocation. *See Brewster v. Dep't of Transp.*, 94 Pa.Cmwlth. 277, 503 A.2d 497 (1986) (*en banc*); *see also Brophy v. Dep't of Transp.*, 94 Pa.Cmwlth. 310, 503 A.2d 1010 (1986). PennDOT further contends the details of what occurred in the litigation of Licensee's DUI convictions is simply not relevant to her designation as a habitual offender because the facts establish she had three DUI convictions in less than five years.

Further, PennDOT argues, contrary to the trial court's reasoning, neither *Duffey* nor the refusal warnings required by Section 1547 of the Vehicle Code support the trial court's conclusion that Licensee must have been warned of the collateral consequences of her guilty plea. PennDOT asserts that, short of the legislative remedy of inserting a warning requirement into Section 1542 of the Vehicle Code, Licensee's only potential remedy was to seek relief from one of her DUI convictions in criminal court. *See Duffey.*

Section 1542 of the Vehicle Code states, in relevant part (with emphasis added):

**(a) General rule.**—The department *shall* revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section. A "habitual offender" shall be any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

**(b) Offenses enumerated.**—*Three convictions arising from separate acts of any one or more of the following offenses committed by any person shall result in such person being designated as a habitual offender:*

\* \* \*

(1.1) *Any violation of Chapter 38 (relating to driving after imbibing alcohol or utilizing drugs)* except for sections 3801(a)(1) and (b) (relating to illegally operating a motor vehicle not equipped with ignition interlock) and 3809 (relating to restriction on alcoholic beverages).

\* \* \*

**(d) Period of revocation.**—The operating privilege of any person found to be a habitual offender under the provisions of this section *shall* be revoked by the department for a period of five years. . . .

75 Pa.C.S. § 1542(a), (b)(1.1), (d).

 "In a license suspension case, the only issues are whether the licensee was in fact convicted, and whether [Penn]DOT has acted in accordance with applicable law." *Dep't of Transp., Bureau of Driver Licensing v. Tarnopolski,* 533 Pa. 549, 552, 626 A.2d 138, 140 (1993). PennDOT bears the initial burden to establish a *prima facie* case that a record of conviction supports a suspension. *Taddei v. Dep't of Transp., Bureau of Driver Licensing,* 982 A.2d 1249 (Pa.Cmwlth.2009). An essential part of satisfying this burden is the production of an official record of the conviction supporting the suspension. *Glidden v. Dep't of Transp., Bureau of Driver Licensing,* 962 A.2d 9 (Pa.Cmwlth.2008). PennDOT must also establish it acted in accordance with applicable law. *Id.*

 Here, PennDOT entered a certified packet of eight documents into the record without objection. R.R. at 30a. These documents constitute official records of Licensee's convictions. Relevant here, PennDOT's certified packet of documents includes Licensee's driving history documenting her three convictions for DUI, as well as the reports of each conviction, within a period of less than one year, justifying her designation as a habitual offender. *See* R.R. at 67a, 74a, 76a, 78a–80a. These certified documents satisfied PennDOT's initial burden to establish the convictions underlying Licensee's designation as a habitual offender. *Fetty v. Dep't of Transp., Bureau of Driver Licensing,* 784 A.2d 236 (Pa.Cmwlth.2001); *Martino v. Commonwealth,* 116 Pa.Cmwlth. 200, 541 A.2d 425 (1988).

 To overcome the rebuttable presumption that she was convicted of these offenses, Licensee bore the burden of proving by clear and convincing evidence that the record was erroneous. *Mateskovich v. Dep't of Transp., Bureau of Driver Licensing,* 755 A.2d 100 (Pa.Cmwlth.2000). Clear and convincing evidence is "evidence that is so clear and direct as to permit the trier of fact to reach a clear conviction, without hesitancy, as to the truth of the facts at issue." *Id.* at 102 n. 6 (citation omitted).

Here, Licensee did not present any rebuttal evidence regarding her DUI convictions. Rather, Licensee admitted she received three DUIs in the six-week period after she was the victim of a violent crime. R.R. at 31a. Licensee explained that she was prescribed medication and underwent trauma therapy as a result of her victimization. *Id.* Licensee asserted she was "just asking that . . . the five year [revocation] be lifted because of extreme extenuating circumstances." *Id.*

The trial court also heard testimony from Licensee's former criminal defense counsel, whose office represented Licensee in two of her three underlying criminal DUI cases. Licensee's former counsel testified that, with regard to the DUI case in which she personally represented Licensee, based on mitigating circumstances, the district attorney allowed Licensee to plead guilty to a first offense, general impairment DUI. *See* Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802. However, Licensee's former counsel agreed she did not consider or discuss the potential for the habitual offender designation with Licensee based on Licensee's three DUI convictions. R.R. at 53a–54a.

Ultimately, the trial court sustained Licensee's appeal, and rescinded the five-year license revocation. R.R. at 60a. For

the reasons set forth below, the trial court erred in sustaining Licensee's appeal.

█ It is well-settled that, "[t] he mandatory suspension of a driver's license upon conviction for DUI is a collateral civil penalty administratively imposed by [PennDOT] pursuant to the mandates of the Motor Vehicle Code *not* the Crimes Code. Thus, the mandatory suspension is not a direct criminal penalty, but rather, is a civil sanction...." *Commonwealth v. Wolf*, 534 Pa. 283, 290, 632 A.2d 864, 867 (1993) (emphasis in original); *see also Duffey*. More particularly, in the context of a license revocation under Section 1542 of the Vehicle Code, an *en banc* panel of this Court previously stated:

> [A] license revocation is a civil proceeding. The suspension of operating privileges is, therefore, a collateral consequence of any criminal proceedings. It is a consequence, civil in nature, whose imposition has been vested in an administrative agency over which the criminal judge had no control and for which he had no responsibility. Courts have thus consistently held that a trial court's failure to inform a defendant of this potential collateral consequence does not invalidate his guilty plea.

*Brewster v. Dep't of Transp.*, 503 A.2d at 498 (citation and quotation omitted); *accord Brophy.*[4]

█ Further, contrary to the trial court's statements at the hearings here, the details of Licensee's plea agreement in the underlying criminal proceedings are not relevant. To that end, as we explained in *Stair v. Department of Transportation, Bureau of Driver Licensing*, 911 A.2d 1014 (Pa.Cmwlth.2006):

> [R]egardless of whether a plea agreement existed in the underlying criminal proceedings, it has no effect on [PennDOT's] duty under the relevant provisions of the Vehicle Code to impose the instant license suspension and ignition interlock requirement.
>
> In other words ... neither the district attorney in plea bargaining, nor the court of common pleas when deciding a criminal matter, has jurisdiction to bind [PennDOT] to withdraw a civil license suspension. *The statutory suspensions following ... a conviction for [DUI] are not bargaining chips to be traded in exchange for criminal convictions; rather, they are mandatory civil penalties, imposed not for penal purposes, but to protect the public by providing an effective means of denying an intoxicated motorist the privilege of using our roads.*

*Id.* at 1018 (citations and quotations omitted). Similarly, "[a] licensee may not collaterally attack an underlying criminal conviction in a civil license suspension proceeding." *Piasecki v. Dep't of Transp., Bureau of Driver Licensing*, 6 A.3d 1067, 1071 (Pa.Cmwlth.2010) (quoting *Duffey*, 536 Pa. at 443, 639 A.2d at 1177).

Here, it is undisputed that Licensee pled guilty to three DUI violations in less than

---

4. We note that in *Sondergaard v. Department of Transportation, Bureau of Driver Licensing*, 65 A.3d 994 (Pa.Cmwlth.2013), this Court held that a lifetime disqualification of an individual's commercial driver's license (CDL) under the Uniform Commercial Driver's License Act, 75 Pa.C.S. §§ 1601–1620, is penal in nature because, unlike the "privilege" of operating a motor vehicle, the lifetime disqualification on a CDL results in an individual's loss of the right to practice his chosen profession. *Id.* at 997. "The severity of this sanction transforms what is a remedial law in the context of a one-year disqualification, into a penal one." *Id.* Here, unlike in *Sondergaard*, we are not confronted with a lifetime ban on an individual's chosen profession, but rather the temporary loss of the privilege of operating a motor vehicle.

a year. These convictions triggered Penn-DOT's duty to revoke Licensee's operating privileges for five years under 75 Pa.C.S. § 1542. PennDOT's designation of Licensee as a habitual offender was proper, and the five-year revocation of her operating privileges is mandatory. *Id.* The trial court conceded as much in its opinion, stating: "Technically speaking, the Commonwealth's habitual offender designation is accurate and the suspension should have been upheld." Tr. Ct., Slip Op. at 7. Indeed, once PennDOT submitted an unrebutted certified record of Licensee's three DUI convictions in less than a year, the trial court lacked discretion to modify the mandatory five-year revocation of Licensee's operating privileges. *See* 75 Pa.C.S. § 1542(a), (b)(1.1), (d); *Bursick,* 526 Pa. at 11, 584 A.2d at 293 ("[PennDOT] is *required* to revoke the operating privilege of *any* person whose driving record meets criteria defining a habitual offender. Revocation is mandatory, not discretionary.") (emphasis in original); *Dep't of Transp., Bureau of Traffic Safety v. Hill,* 117 Pa. Cmwlth. 160, 543 A.2d 211, 212 (1988) ("When the common pleas court finds that the licensee has committed the violation for which the penalty was imposed, it is a manifest abuse of discretion to modify the penalty because the court disagrees with the penalty.") (Citation omitted).

Moreover, our Supreme Court's recent decision in *Abraham* does not alter this result. There, the Court considered whether a public school teacher's criminal defense counsel was ineffective for failing to inform the teacher that he would forfeit his pension upon pleading guilty to specified offenses. The Court framed the issues before it as: (1) whether, in light of

*Padilla,* the distinction in Pennsylvania between direct and collateral consequences to define scope of constitutionally "reasonable and professional assistance" required under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is appropriate; and, (2) if so, whether the forfeiture of a pension that stems from a public school teacher's negotiated plea to crimes committed in the scope of his employment is a collateral civil consequence of a criminal conviction that relieves counsel from any affirmative duty to investigate and advise. In resolving the first issue, the Court held:

> *Padilla did not abrogate the application of [a direct versus collateral consequences] analysis in cases that do not involve deportation. Frometa's* [5] *general holding remains: a defendant's lack of knowledge of collateral consequences of the entry of a guilty plea does not undermine the validity of the plea,* and counsel is therefore not constitutionally ineffective for failure to advise a defendant of the collateral consequences of a guilty plea.

*Abraham,* 619 Pa. at 304–05, 62 A.3d at 350 (emphasis added).

After determining the direct versus collateral consequences analysis remained viable in cases other than those involving deportation, the Court then explained that it previously defined the distinction between a direct and collateral consequence of a guilty plea as the distinction between a criminal penalty and a civil requirement over which a sentencing judge has no control. In determining whether a statutory provision constitutes a criminal penalty or a civil requirement, the Court observed it previously adopted the U.S. Supreme

---

**5.** *See Commonwealth v. Frometa,* 520 Pa. 552, 555 A.2d 92 (1989), *abrogated in part by Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (deportation was a collateral consequence of a guilty plea and therefore did not need to be explained to the defendant).

Court's analysis in *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). After a comprehensive analysis of the factors set forth in *Smith,* the Court ultimately held the pension forfeiture statute was not so punitive in force or effect as to negate the legislative intent that it be a civil, remedial provision. Because the statute was not punitive in nature, the Court held forfeiture of the pension was a collateral consequence of the teacher's guilty plea. Further, because counsel could not be deemed ineffective for failing to advise the teacher regarding the collateral consequences of his plea, the Court rejected the ineffective assistance of counsel claim.

Of further note, in *Abraham,* the Supreme Court cited its 1994 decision in *Duffey,* observing that *"Duffey* held the loss of driving privileges is a collateral consequence of a conviction for underage drinking...." *Abraham,* 619 Pa. at 305, 62 A.3d at 350, n. 8.[6] The issue in *Duffey* was whether the license suspension triggered by an underage drinking conviction was a criminal penalty requiring a licensee to knowingly and intelligently consent to such a suspension when he made his plea bargain. In resolving this issue, the Court stated:

> Today, we hold that loss of driving privileges is a civil collateral consequence of a conviction for underage drinking.... *Courts of this Commonwealth have consistently recognized that a license suspension is a collateral civil consequence of a criminal conviction. See Commonwealth v. Englert* [311 Pa.Super. 78], 457 A.2d 121 (Pa.Super.1983) (suspension imposed following a conviction for failing to stop at the

scene of an accident constituted a civil collateral consequence); [*Brophy* ] (*operating privilege suspension as a habitual offender constitutes a collateral civil consequence of acceptance of ARD on the underlying offense* ). *See also [Bursick]; [Brewster]; Zanotto v. Department of Transportation, Bureau of Driver Licensing* [83 Pa.Cmwlth. 69], 475 A.2d 1375 (Pa.Cmwlth.1984). *We recognize that these cases involved offenses other than underage drinking. However, we find that these cases establish that license suspension is properly considered a collateral consequence rather than a criminal penalty.*

> *As we hold that [the licensee's] suspension is a collateral civil consequence of his conviction, there is no requirement that he know of this consequence at the time of his guilty plea. [The licensee's] loss of driving privileges is irrelevant to the determination of whether a guilty plea was entered voluntarily and knowingly ....*

As we hold that the suspension of operating privileges pursuant to 18 Pa. C.S.A. [sic] § 6310.4 is a collateral civil consequence of a criminal conviction and is not part of the criminal sentence, we must also hold that it is not proper for the [licensee] to attack the validity of the criminal conviction upon which [Penn-]DOT based the suspension in this civil proceeding. *We have established that a licensee may not collaterally attack an underlying criminal conviction in a civil license suspension proceeding.* In [*Bursick* ], this court held that the scope of review of an operating privilege suspension which resulted from a criminal conviction does not include the authority

---

6. The Court also cited *Duffey* when it reiterated that the distinction between a direct and collateral consequence of a ˙guilty plea was effectively defined as the distinction between

a criminal penalty and a civil requirement over which a sentencing judge has no control. *Commonwealth v. Abraham,* 619 Pa. 293, 62 A.3d 343 (2012).

to attack the validity of the underlying criminal conviction. *See also [Wolf].* Numerous Commonwealth Court decisions have adhered to this principle. *See, E.g., Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Heeter* [128 Pa.Cmwlth. 480], 563 A.2d 993 (Pa.Cmwlth.1989); *Radice v. Commonwealth, Dep't of Transp., Bureau of Traffic Safety* [118 Pa.Cmwlth. 627], 545 A.2d 1005 (Pa.Cmwlth.1988). Under these principles of law, [the licensee] cannot attempt to withdraw his guilty plea in this civil proceeding. *When a licensee becomes aware that he is going to lose his driving privilege as a consequence of paying a fine on a summary offense, his only remedy is to seek allowance of appeal nunc pro tunc from the summary conviction. Heeter,* 563 A.2d at 994.

We would suggest to our legislature that it should be clearly stated on the citation, if it is not already, that a guilty plea to the offense of underage drinking will result in a license suspension. While we hold today that a licensee does not have to be warned of the collateral consequences of license suspension, we believe it would be more equitable and no great burden on the Commonwealth to provide such a warning.

*Duffey,* 536 Pa. at 440–41, 442–43, 639 A.2d at 1176, 1177 (emphasis added).

In addition, in *Zanotto,* we specifically rejected a licensee's argument that he was denied due process because he was not informed of the habitual offender designation at the time of his convictions, explaining:

[The licensee] contends that a *de novo* hearing in common pleas court does not satisfy due process, *because at the time of his convictions, he was not informed of the ultimate consequences of multiple convictions, i.e., the triggering of the*

*habitual offender provision.* We have recently held, however, that a *de novo* hearing adequately safeguards the notice and hearing requirements of due process. *Yeckley v. Commonwealth of Pennsylvania* [81 Pa.Cmwlth. 576], 474 A.2d 71 (Pa.Cmwlth.1984). *Cf. [Englert]* (the suspension of operating privileges is a collateral consequence, civil in nature, of a conviction; a trial court's failure to inform a defendant of a potential collateral consequence does not invalidate a guilty plea).

*Zanotto,* 475 A.2d at 1375–76 (emphasis added).

In short, based on our review of Section 1542 of the Vehicle Code and applicable case law, there is simply no support for the trial court's determination that Licensee's five-year operating privilege revocation is invalid based on Licensee's failure to receive notice of the habitual offender designation prior to her decision to plead guilty to her third DUI offense.

Further, while the trial court found support for its decision in the implied consent warnings in Section 1547(b)(2) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(2), we disagree that this provision supports the result reached by the trial court. To that end, unlike Section 1547, which specifically requires recitation of the consequences of a refusal to submit to chemical testing by a police officer, Section 1542 contains no counterpart.

In addition, while the trial court pointed to the Supreme Court's "suggestion" to the legislature in *Duffey* regarding the inclusion of a license suspension warning on a citation for underage drinking, *Duffey,* 536 Pa. at 443, 639 A.2d at 1177, that statement, made in *dicta,* did not alter the Court's essential holding that "a licensee does not have to be warned of the collateral consequences of license suspension...." *Id.* Perhaps more importantly, the propri-

ety of the inclusion of any such warning is a question for the General Assembly, and that body included no warning requirement in Section 1542 of the Vehicle Code.

Despite our respect for the compassionate trial court, we remain mindful of the proper roles of a trial court and an intermediate appellate court. Our roles are to apply existing law, reserving for our Supreme Court the sensitive policy judgments attendant to major changes in the law. Policy judgments must consider not only Licensee here, but also other licensees who clearly come within the habitual offender statutory sanctions, and the risk such offenders pose to citizens lawfully using our roadways. While we are sympathetic to Licensee's situation, based upon the application of well-settled law to undisputed facts, we must reverse the trial court.

## ORDER

**AND NOW,** this 31st day of October, 2013, the order of the Court of Common Pleas of Cumberland County is **REVERSED.**