Michael A. KOZIENIAK

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 11, 2014.

Decided Sept. 4, 2014.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

John M. O'Connell, Jr., Greensburg, for appellee.

BEFORE: BERNARD L. McGINLEY, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge.

OPINION BY Judge LEAVITT.

The Department of Transportation, Bureau of Driver Licensing (PennDOT), appeals an order of the Court of Common Pleas of Westmoreland County (trial court) reversing the one-year disqualification of Michael A. Kozieniak's (Licensee) commercial driver's license pursuant to Section 1611(a)(1) of the Vehicle Code, 75 Pa.C.S. § 1611(a)(1). PennDOT contends that the trial court erred in holding that PennDOT's disqualification of Licensee to operate commercial vehicles was penal in nature and imposed upon him without adequate due process. We reverse.

## Background

Licensee has held a commercial driver's license (CDL) since June 24, 1991, and has been professionally driving trucks for over forty years. He currently works as a truck driver in Pittsburgh. On December 29, 2012, Licensee violated Section 3802(b) of the Vehicle Code, 75 Pa.C.S. § 3802(b), by driving with a "[h]igh rate of alcohol" in his system, *i.e.*, an alcohol concentration between 0.10% and 0.16%. At the time of this violation, Licensee was driving his personal vehicle. Licensee applied for and was accepted into Accelerated Rehabilitative Disposition (ARD). By notice dated May 28, 2013, PennDOT informed Licensee that, as a result of his acceptance of ARD, it was imposing a one-year disqualification of his CDL under authority of Section 1611(a) of the Vehicle Code, 75 Pa.C.S. § 1611(a).[1]

---

1. It states:
 (a) First violation of certain offenses.— Upon receipt of a report of conviction, the department shall, in addition to any other penalties imposed under this title, disqualify any person from driving a commercial motor vehicle or school vehicle for a period of one year for the first violation of:

.

Licensee filed a statutory appeal, and a *de novo* hearing was held by the trial court on September 30, 2013. Licensee argued that his one-year CDL disqualification was improper because his acceptance of ARD meant he was never actually convicted of a DUI offense. PennDOT offered into evidence, without objection, documents showing that it notified Licensee of a 30–day suspension of his driving privileges, with a one-year disqualification of his CDL.[2] PennDOT then rested. Licensee testified without cross-examination by PennDOT.

The trial court found that because Penn-DOT's one-year CDL disqualification was penal in nature, Licensee was entitled to the "full panoply of due process." Trial Court Opinion at 3. The trial court further found that, because Licensee had been accepted into ARD instead of going to trial for his Vehicle Code violation, Licensee did not receive the process due to him for a CDL disqualification. The trial judge explained that

> there has never been a true conviction to which these proceedings can be collateral and the penalty aspect of disqualification results without any prior notice or meaningful hearing on the licensee's guilt or innocence.

*Id.* at 4. The trial court sustained Licensee's appeal, and PennDOT appealed to this Court.

On appeal,[3] PennDOT raises three assignments of error. First, PennDOT contends that the trial court erred in finding that Licensee was entitled to notice that his acceptance into ARD could result in a loss of his CDL. Second, PennDOT argues that the trial court erred in finding that its one-year disqualification of Licensee's commercial driving privilege was penal in nature. Third, PennDOT argues that the trial court erred in finding Licensee was denied due process in both the criminal proceeding and the statutory license suspension appeal.

### I. Notice of Consequence of ARD

PennDOT first argues that the trial court erred in finding that Licensee was denied due process because he was never informed that his acceptance into ARD could cause him to lose his CDL. Penn-DOT contends that Licensee's argument is a collateral attack on Licensee's acceptance into ARD, which should not have been allowed by the trial court.

 There is no requirement in the Vehicle Code that PennDOT must advise a licensee entering ARD that his commercial driving privilege may be suspended. *See* 75 Pa.C.S. § 1603, 1611(a). In *Commonwealth v. Duffey*, 536 Pa. 436, 639 A.2d 1174 (1994), a licensee appealed the 90–day suspension of his driver's license on the grounds that he did not knowingly and intelligently consent to the suspension when he entered into his plea agreement. In evaluating the licensee's argument, our Supreme Court stated:

> We would suggest to our legislature that it should be clearly stated on the citation, if it is not already, that a guilty plea to the offense of underage drinking will result in a license suspension. While

---

(1) section 3802 (relating to driving under influence of alcohol or controlled substance) or former section 3731, where the person was a commercial driver at the time the violation occurred[.]

75 Pa.C.S. § 1611(a).

**2.** Licensee did not contest the 30–day suspension of his driver's license.

**3.** Our scope of review is limited to determining whether an error of law was committed, the trial court's decision is supported by substantial evidence, or the trial court abused its discretion. *Spagnoletti v. Department of Transportation, Bureau of Driver Licensing,* 90 A.3d 759, 764 n. 3 (Pa.Cmwlth.2013).

we hold today that a licensee does not have to be warned of the collateral consequences of license suspension, we believe it would be more equitable and no great burden on the Commonwealth to provide such a warning.

*Id.* at 1177. The legislature has, to date, not followed the Supreme Court's suggestion. It has not amended the Vehicle Code to require that a licensee be warned, before he pleads guilty to an alcohol-related driving offense, that his license may be suspended if he pleads guilty. *Duffey* remains good law. There is no reason to apply a different standard to ARD than to a guilty plea. The trial court erred in holding that Licensee was entitled to notice that his CDL could be suspended by his agreement to enter ARD.

■ We turn, then, to the second part of PennDOT's argument. A collateral attack occurs where the recipient of a civil sanction that is collateral to a criminal conviction attempts to contest the criminal conviction in an appeal of the civil sanction. *Commonwealth v. Bursick*, 526 Pa. 6, 584 A.2d 291, 294 (1990). This Court may not consider whether a licensee *should have been* convicted; we may consider only whether he *was* convicted. *Id.* Thus, "[w]hen a licensee becomes aware that is he going to lose his driving privilege as a consequence of [his criminal conviction], his only remedy is to seek allowance of appeal *nunc pro tunc* from the . . . conviction." *Duffey*, 639 A.2d at 1177.

In his appeal to the trial court, Licensee argued that he "was *not convicted* of any violation and has been placed on the ARD Program in Westmoreland County and ex-

pects that upon successful completion of that Program, the charges against him will be dismissed." Appeal of Licensee to the Court of Common Pleas of Westmoreland County, June 6, 2013 (emphasis added). Licensee was not contesting whether he violated Section 3802 of the Vehicle Code but, rather, whether he received a "conviction." In short, Licensee was not collaterally attacking the resolution of his underlying criminal offense. However, it matters not to the outcome.

■ Section 1611(a)(1) of the Vehicle Code requires that

(a) . . . *Upon receipt of a report of conviction,* the department shall, in addition to any other penalties imposed under this title, disqualify any person from driving a commercial motor vehicle or school vehicle for a period of one year for the first violation of:

(1) section 3802 [4] (relating to driving under the influence of alcohol or controlled substance) or former section 3731, where the person was a commercial driver at the time the violation occurred.

75 Pa.C.S. § 1611(a)(1) (emphasis added). The Vehicle Code defines a "conviction" as

a finding of guilty or the entering of a plea of guilty, nolo contendere or the unvacated forfeiture of bail or collateral deposited to secure a person's appearance in court as determined by the law of the jurisdiction in which the prosecution was held. A payment of the fine or court cost of entering into an installment agreement to pay the fine or court cost for the violation by any person charged

---

4. Section 3802(b) of the Vehicle Code states that an

individual may not drive, operate, or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentra-

tion in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated, or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(b).

with a violation of this title is a plea of guilty. *The term shall include the acceptance of Accelerated Rehabilitative Disposition* or other preadjudication disposition for an offense or an unvacated finding of guilt or determination of violation of the law or failure to comply with the law by an authorized administrative tribunal. The term also includes a violation of a condition of release without bail, including the failure to pay a fine or appear in court to contest a citation. The term does not include a conviction which has been overturned or for which an individual has been pardoned.

75 Pa.C.S. § 1603 (emphasis added). Under this definition, Licensee's acceptance into ARD constituted a "conviction" of violating Section 3802. Once Licensee was convicted of a Section 3802 violation, PennDOT was required to disqualify his commercial driving privilege under Section 1611(a)(1).

We disagree with PennDOT's claim that Licensee has lodged an improper collateral attack on his underlying criminal conviction. Nevertheless, Licensee's position that he was not "convicted" lacks merit given the definition of conviction in Section 1611(a)(1) of the Vehicle Code.

## II. Civil or Punitive Penalty

PennDOT contends that the trial court erred in holding that disqualification of Licensee's CDL was penal in nature. The trial court explained this holding as follows:

> I find that disqualification for one year is penal in nature and entitles him to a full panoply of due process. This Court has previously found, in *Sondergaard v. D.O.T.,* 65 A.3d 994 (Pa.Cmwlth.2012), that disqualification for life is a penalty. I submit that the difference between one year disqualification and lifetime dis-

qualification is a matter of degree and not of kind.

Trial Court Opinion at 3. PennDOT argues that the trial court erred because it did not undertake the analysis established in *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), which was adopted by our Supreme Court in *Commonwealth v. Abraham,* 619 Pa. 293, 62 A.3d 343 (2012).

In *Abraham,* the appellant, a recently retired high school teacher, was charged with corruption of a minor. The appellant negotiated a plea deal, unaware that pleading guilty to the corruption charge would result in the forfeiture of his pension under the Public Employee Pension Forfeiture Act (PEPFA), Act of July 8, 1978, P.L. 752, *as amended,* 43 P.S. §§ 1311–1315. The appellant then sought to withdraw his guilty plea and, on appeal to our Supreme Court, claimed that his counsel was ineffective for not advising him that the plea bargain would cost him his pension. The appellant argued that he did not knowingly and voluntarily enter into the plea agreement.

Our Supreme Court rejected the appellant's ineffective assistance argument, reasoning that effective assistance of counsel is required only for a criminal proceeding. By contrast, the forfeiture of appellant's pension was civil in nature. In holding that the loss of a pension was civil, not penal, the Court used the U.S. Supreme Court's analysis in *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

In *Smith,* the U.S. Supreme Court held that, first, one must look to whether the legislature has expressed an intention to make a statutory penalty civil or penal. That expressed intention may be overcome but only after application of the seven factor balancing test established in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83

S.Ct. 554, 9 L.Ed.2d 644 (1963). The seven factors are

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Abraham*, 62 A.3d at 350 (citations omitted). In adopting the Smith/Kennedy analysis, our Supreme Court explained that "only the clearest proof will suffice to override legislative intent and transform ... a civil remedy into a criminal penalty." *Abraham*, 62 A.3d at 351 (citations omitted). Our Supreme Court concluded that the pension forfeiture at issue was part of a civil regulatory regime, not a penal sanction.

■ In the case of a one-year CDL disqualification for driving under the influence, the legislature has expressed its intention that this sanction is civil and regulatory in nature, not penal.[5] It stated:

> (a) Purpose.—The purpose of this chapter is to implement the Commercial Motor Vehicle Safety Act of 1986 (Public Law 99–570, 49 U.S.C. app. § 2701 et seq.) and reduce or prevent commercial

motor vehicle accidents, fatalities and injuries[.]

75 Pa.C.S. § 1602(a). Protecting the public and conforming to federal statutory law expresses a regulatory, not penal, intent. We turn, then, to the seven-factor test set forth in *Smith/Kennedy*, 374 U.S. 144, 83 S.Ct. 554 to determine if that intent can be upheld.

Regarding the first factor, the disqualification of Licensee's CDL is not an affirmative restraint, such as incarceration and deportation.[6] *See Abraham*, 62 A.3d at 351. As explained in *Abraham*, an appellant "may be precluded from receiving [his paycheck] which · he would otherwise [earn], but he is not precluded from earning a living in some other capacity." *Abraham*, 62 A.3d at 351. Here, Licensee is precluded, temporarily, from earning a living by driving a truck, but he is free to pursue other forms of employment during his period of disqualification.

The second *Kennedy* factor asks whether the sanction has traditionally been viewed as a punishment. Licensee concedes in his brief that "[c]ounsel ... can find no case one way or the other concerning whether the loss of his CDL has been considered · a punishment." Licensee's Brief at 5. Our Supreme Court in *Duffey*, 639 A.2d at 1176, cited a case that concluded that "license suspension [generally] is properly considered a collateral consequence rather than a criminal penalty." In light of this precedent, suspension of one's driving privilege, whether commercial or personal, has traditionally been con-

---

5. We have previously held, post-*Abraham*, that mandatory license revocation by PennDOT, pursuant to the Vehicle Code, is a civil sanction and not penal in nature. *See Spagnoletti*, 90 A.3d at 767 and *Sondergaard v. Department of Transportation*, 65 A.3d 994, 997 (Pa.Cmwlth.2013) ("The severity of [lifetime disqualification] transforms what is *a*

*remedial law in the context of a one year disqualification*, into a penal law." (emphasis added)). However, because *Spagnoletti* and *Sondergaard* did not go through the *Abraham/Smith* analysis, we do so here.

6. We note that Licensee failed to address this factor in his brief to this Court.

sidered a civil sanction and not a criminal punishment.

Likewise, the remaining *Smith/Kennedy* factors weigh in favor of the conclusion that Section 1611(a)(1) imposes a non-punitive civil sanction. With respect to the third factor, Licensee "concedes that scienter is not a factor in the law permitting the suspension of a CDL by being accepted into the ARD program." Licensee's Brief at 5. Regarding the fourth factor, Section 1611(a)(1) does not exact retribution, which is the traditional aim of punishment. Licensee concedes "that [the fifth] factor is not in any way applicable to this case." Licensee's Brief at 6. Regarding the sixth and seventh factors, the rationale for the sanction at issue, as previously explained, is to protect the public from the dangers presented by impaired drivers. This Court cannot say, based on the evidence presented, that the sanction was excessive.

In summary, application of the seven *Smith/Kennedy* factors does not overcome the legislature's expressed intent that the one-year CDL disqualification is a civil sanction. Accordingly, we reverse the trial court's holding that Section 1611(a)(1) is penal in nature, thereby triggering the full panoply of due process owed to a criminal defendant.

### III. Due Process

PennDOT's final argument is that the trial court erred in concluding that Licensee was denied due process. Our Supreme Court has explained that "[d]ecisions of the United States Supreme Court have made it clear that a person's interest in his driver's license is 'property,' which a State may not revoke or suspend without satisfying the due process guarantee of the Fourteenth Amendment." *Department of Transportation v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1163 (2000). Due process is satisfied when the State affords a licensee notice and a hearing before revoking his license. *Id.*

In *Zanotto v. Department of Transportation*, 83 Pa.Cmwlth. 69, 475 A.2d 1375, 1376 (1984), the licensee was designated a "habitual offender" after his third DUI conviction. The mandatory penalty for such a designation was an automatic five-year license suspension. Even though the licensee received a *de novo* license suspension hearing, he asserted that he was deprived of due process. In rejecting that claim, we held that "a *de novo* hearing adequately safeguards the notice and hearing requirements of due process." *Id.* at 1375. Accordingly, the licensee's appeal was denied.

The recent case of *Spagnoletti*, 90 A.3d 759, which reaffirmed our holding in *Zanotto*, is also instructive. In *Spagnoletti*, the licensee, a designated "habitual offender," contested the automatic five-year suspension of her license on the basis that she was denied due process. Specifically, the licensee challenged the voluntariness of her guilty plea since she was unaware of the "habitual offender" designation and its collateral civil consequences. The trial court agreed and sustained the licensee's appeal. In reversing the trial court, we explained that "there is simply no support for the trial court's determination that [the licensee's] five-year operating privilege revocation is invalid based on [the licensee's] failure to receive notice of the habitual offender designation prior to her decision to plead guilty to her third DUI offense." *Spagnoletti*, 90 A.3d at 770. We continued:

> Despite our respect for the compassionate trial court, we remain mindful of the proper roles of a trial court and an intermediate appellate court. Our roles are to apply existing law, reserving for our Supreme Court the sensitive policy

judgments attendant to major changes in the law.

*Id.* at 771.

As was the case for the licensees in *Zanotto* and *Spagnoletti,* Licensee received a *de novo* hearing, and this satisfied his right to due process. The trial court erred in concluding otherwise.

For all of the foregoing reasons, we reverse the decision of the trial court and reinstate the one-year disqualification of Licensee's CDL.

**ORDER**

AND NOW, this 4th day of September, 2014, the order of the Court of Common Pleas of Westmoreland County dated December 30, 2013, in the above-captioned matter is hereby REVERSED.