IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Andrew Factor, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | No. 163 C.D. 2018 |
| Bureau of Driver Licensing | : | Argued: November 15, 2018 |

BEFORE: HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON          FILED: December 6, 2018

Andrew Factor (Licensee) appeals from the January 11, 2018 order of the Court of Common Pleas of Montgomery County (trial court) denying his statutory appeal from a 12-month driver's license suspension imposed by the Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[1] Upon review, we affirm.

While traveling northbound in a marked police vehicle on a two-lane road at approximately 9:15 p.m. on the night of November 11, 2016, Upper Merion Township police officer Brian Manion observed Licensee's vehicle cross the road's

---

[1] 75 Pa. C.S. § 3802.

double yellow center line as it approached in the opposite lane of traffic, requiring Officer Manion to move his vehicle into the emergency lane on his side of the road. Notes of Testimony (N.T.) 11/13/2017 at 3-4, 13, 15. Once Licensee's vehicle passed his patrol car, Officer Manion made a U-turn, caught up to, and followed Licensee's vehicle. *Id.* at 4, 15. After observing Licensee's vehicle cross the center line two more times, Officer Manion engaged his emergency lights and siren and initiated a traffic stop. *Id.* at 4, 15-16.

After stopping the vehicle, Officer Manion approached the vehicle on the passenger's side and made contact with Licensee. N.T. 11/13/2017 at 5. Licensee rolled down his window and Officer Manion immediately detected a strong odor of alcohol emanating from Licensee's breath. *Id.* at 5, 17. Officer Manion also observed Licensee's eyes were glassy and his speech was slurred. *Id.* at 5, 21. Licensee told Officer Manion that he was going home, but he was not sure from where he was coming.[2] *Id.* at 5. Officer Manion collected Licensee's license, registration, and insurance information and returned to his patrol vehicle, where he called for backup. *Id.* at 17-18.

Once the requested backup arrived, Officer Manion asked Licensee to alight from his vehicle and perform three field sobriety tests. N.T. 11/13/2017 at 5, 18. After Officer Manion demonstrated the field sobriety tests, Licensee attempted but failed to satisfactorily perform all three.[3] *Id.* at 5-6. Based on Licensee's

---

[2] Licensee also told Officer Manion that he was traveling from Philadelphia, although he was actually traveling toward Philadelphia when stopped. N.T. 11/13/2017 at 5.

[3] Officer Manion had Licensee say the alphabet and perform the one-leg stand and balance test and the nine-step walk-and-turn test. N.T. 11/13/2017 at 5-6, 18. Licensee failed the alphabet exercise by stopping after reaching the letter V. *Id.* at 19. He failed the one-leg balance test by dropping his foot to the ground eight times and failing to keep his arms at his side as instructed.

2

performance on the field sobriety tests, Officer Manion administered a portable breath test (PBT). *Id.* at 6, 20. The PBT registered Licensee's blood alcohol content at 0.20%, above the legal limit of 0.08%. *Id.* at 6-7, 20.

After Licensee failed the field sobriety tests and the PBT, Officer Manion took him into custody for DUI and placed him in the back seat of his patrol vehicle. N.T. 11/13/2017 at 7. Once Licensee was in the back of the patrol vehicle, Officer Manion read him the entire DOT DL-26B Request for Chemical Testing form (DL-26B form) verbatim and requested that Licensee consent to chemical testing. *Id.* at 7-8, 22. Licensee refused to submit to chemical testing. *Id.* at 8, 23-24. Following Licensee's refusal to consent to chemical testing, Officer Manion transported Licensee back to the police station for processing. *Id.* at 11, 26.

On December 14, 2015, following his conviction for DUI, DOT mailed Licensee a letter notifying him that, as a result of his refusal to submit to chemical testing on November 11, 2016, his license would be suspended pursuant to the Implied Consent Law for 12 months, effective January 25, 2017. *See* License Suspension Hearing Exhibit C-1. Licensee appealed and the trial court conducted a hearing on Licensee's license suspension appeal on November 13, 2017. *See* N.T. 11/13/2017. On January 11, 2018, following the hearing and briefing by the parties, the trial court entered its order denying Licensee's appeal. *See* Trial Court Order dated January 11, 2018. On January 22, 2018, Licensee filed a timely notice of appeal to this Court.[4]

---

*Id.* at 20. Licensee failed the walk-and-turn test by losing his balance four times and failing to walk heel-to-toe in a straight line as directed. *Id.*

[4] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

3

Licensee raises two claims in this appeal. First, Licensee claims that the trial court's finding that Licensee refused chemical testing was not supported by competent evidence. *See* Licensee's Brief at 4. Second, Licensee alleges that license suspensions imposed pursuant to Pennsylvania's Implied Consent Law are punitive and not civil in nature and therefore unconstitutional under *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct. 2160 (2016). *Id.* at 4.

Licensee first argues that the trial court erred in holding that Licensee refused the request that he submit to chemical testing because Officer Manion could not recall the exact words of Licensee's refusal in his testimony. *See* Licensee's Brief at 11-12. We disagree.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Department of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, Licensee does not challenge that he was driving the vehicle, that police had probable cause upon which to arrest him and request that he submit to chemical testing, or that the

4

police read him the DOT DL-26B form that warned that refusal would result in a license suspension. Thus, we need only concern ourselves with whether Licensee refused to submit to the requested chemical testing.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015); *see also Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). The question of refusal by a licensee to consent to chemical testing "turn[s] on a consideration of whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Nardone*, 130 A.3d at 749.

Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto. *See Dep't of Transp., Bureau of Driver Licensing v. Renwick*, 669 A.2d 934, 939 (Pa. 1996); *see also McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013) (licensee's questioning police regarding consequences of refusal and refusing to sign consent form constituted refusal to consent to chemical testing); *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594 (Pa. Cmwlth. 2003) (repeated interruption and aggressive behavior while being read warnings constituted a refusal to consent to chemical testing). Further, an explicit refusal is not required to find a licensee refused to consent to chemical testing; "a licensee's conduct may constitute a refusal." *Park*, 178 A.3d at 281; *see also Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (a general unwillingness

5

to submit to testing demonstrated by a licensee's overall conduct demonstrated a refusal to consent to chemical testing).

Of course, as fact-finder in license suspension appeals, the trial court determines both the credibility of witnesses and weight assigned to the evidence presented. *Park*, 178 A.3d at 284. "It is well settled that the trial court's credibility determinations in a license suspension appeal will not be second-guessed on appeal." *Id.*

Here, Officer Manion testified at Licensee's license suspension appeal hearing that, after concluding Licensee was intoxicated and placing him into custody, he explained the chemical testing process to Licensee. *See* N.T. 11/13/2017 at 7-8. After explaining the process, Officer Manion read the entire DL-26B form to Licensee verbatim and asked whether Licensee would consent to chemical testing. *Id.* at 8, 22, 27. Officer Manion testified Licensee understood what Officer Manion explained, read, and requested. *Id.* at 27. Although he could not recall Licensee's exact response to being asked whether he would consent to chemical testing, Officer Manion repeatedly testified that he understood Licensee's reply to be a refusal to submit to the requested chemical testing. *Id.* at 8, 24, 28. The trial court credited Officer Manion's testimony. *See* Trial Court Opinion at 11. Additionally, DOT submitted, and the trial court accepted, the DL-26B form and other certified documents related to Licensee's suspension into evidence at the hearing. *Id.* at 8-10.[5] The DL-26B form included certifications signed by Officer Manion that: (1) he

---

[5] DOT moved a collection of certified records identified as Exhibit C-1 into evidence. N.T. 11/13/2017 at 8-10. Licensee objected to the portions of Exhibit C-1 that contained Officer Manion's incident report and Licensee's driver's license record, and DOT agreed to remove the report from C-1. *Id.* With that modification, the trial court admitted the first five pages of Exhibit C-1, consisting of the DOT certification, the license suspension letter, and a copy of the DL-26B form, into evidence without objection. *Id.*

read Licensee the DL-26B warnings[6] and (2) Licensee refused to sign the form after being advised of the warnings. *See* Exhibit C-1, DL-26B form. The DL-26B form also included an affidavit signed by Officer Manion attesting that: (1) Licensee was placed under arrest for DUI; (2) Officer Manion had requested Licensee submit to blood testing; (3) Officer Manion had read the DL-26B warnings to Licensee; and (4) Licensee had refused to submit to blood testing after having been read the warnings. *Id.* Licensee offered neither testimony nor documentary evidence to rebut Officer Manion's testimony.

Based on this evidence the trial court determined Licensee refused to consent to the chemical testing. *See* Trial Court Opinion at 9-11. The trial court found the testimony of Officer Manion and the DL-26B form submitted into evidence supported a conclusion that Licensee refused to provide unqualified, unequivocal consent to chemical testing when it was requested. *Id.* Further, the trial

---

[6] The DL-26B form provides the following warnings to be read to a motorist under arrest for DUI:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

Exhibit C-1, DL-26B form.

7

court found that Licensee's argument that his response may have been misinterpreted was largely speculative and unsupported by the testimony presented, which the court found credible. *Id.* Finally, the trial court noted that Licensee presented no authority for the proposition that a police officer's failure to record or testify verbatim as to the response a licensee provided in refusing to consent to chemical testing invalidates a refusal-based license suspension. *Id.*

We find no abuse of discretion in the trial court's determination that Licensee refused to consent to the requested chemical testing. Officer Manion repeatedly stated in his testimony, which the trial court credited, that Licensee refused to consent to chemical testing when requested. That Officer Manion could not recall Licensee's exact words did not serve to negate the officer's repeated, unequivocal testimony that Licensee refused to consent to chemical testing when requested. The DL-26B form entered into evidence corroborated Officer Manion's testimony and further supported the trial court's finding that Licensee failed to consent to chemical testing in an unqualified and unequivocal fashion. Additionally, Licensee offered no evidence to establish that he either was not capable of making a knowing and conscious refusal or was physically unable to take the test. We decline Licensee's invitation to reweigh the evidence presented in this matter and consequently find no merit to Licensee's argument that the trial court erred in this regard.

Next, Licensee argues that the license suspensions imposed pursuant to the Implied Consent Law are unconstitutional under *Birchfield v. North Dakota*. *See* Licensee's Brief at 12-22. Licensee argues that Implied Consent Law license suspensions are essentially punitive in nature and are therefore criminal, as opposed to civil, sanctions. *Id.* We do not agree.

8

Initially, we note that this Court has definitively stated that license suspensions imposed pursuant to the Implied Consent Law are civil, not criminal, sanctions. *See Boseman v. Dep't of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 17 (Pa. Cmwlth.), *appeal denied*, 170 A.3d 996 (Pa. 2017); *see also Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1037 n.7 (Pa. Cmwlth. 2018). In *Boseman*, this Court noted that, "[b]y its own language, *Birchfield*, does not apply to implied consent laws that merely impose civil penalties." *Boseman*, 157 A.3d at 21. The Court further explained:

> Unlike *Birchfield*, the present case involves a civil license suspension, ***not a criminal proceeding***. . . . [A]lthough *Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case before us ***in this civil license suspension appeal under the Implied Consent Law***.

*Id.* (emphasis added).[7]

In spite of this precedent, Licensee argues that Implied Consent Law license suspensions are punitive, not civil, sanctions. *See* Licensee's Brief at 12-22. To establish this argument, Licensee relies on a two-part test wherein "the Court first inquires whether the legislature's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." *Commonwealth v. Williams*, 832 A.2d 962, 971 (Pa. 2003). Under this test, a court first determines whether the General Assembly intended to impose punishment. "In applying the first element of

---

[7] We note, as did the trial court, that the DL-26B form employed in this matter is a post-*Birchfield* form that removed the previous criminal consequences language of the DL-26 form and now accurately advises individuals of the consequences faced for refusing to consent to chemical testing upon their arrest for DUI. *See* Trial Court Opinion at 3.

9

this test, the sole question is whether the General Assembly's intent was to punish." *Id.* If the Court determines the General Assembly's intent was to impose a civil sanction as opposed to a criminal punishment, the analysis proceeds to the second step of determining whether the law nevertheless provides a sanction so punitive as to transform an intended civil remedy into a criminal penalty by balancing the following non-exhaustive list of factors:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 973 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

> In applying these factors, the Supreme Court has stated that only the "clearest proof" that a law is punitive in effect may overcome a legislative categorization to the contrary. While a precise definition of what constitutes the "clearest proof" is rarely articulated, such requirement mirrors the general presumption of validity enjoyed in Pennsylvania by all lawfully enacted legislation. Thus, for present purposes we understand the "clearest proof" standard to indicate that the *Mendoza–Martinez* factors must weigh heavily in favor of a finding of punitive purpose or effect in order to negate the General Assembly's intention that the Act be deemed civil and remedial.

*Id.* (citations omitted).

10

Regarding the first inquiry, whether the General Assembly's intent in enacting the law was to punish, Licensee argues that the General Assembly's amendment of Section 1547(b)'s title from "Suspension for refusal" to "Civil penalties for refusal" "signals the General Assembly's intent to turn a section that was previously regarded as a punishment into a civil penalty." Licensee's Brief at 17. This argument is unsupported, unpersuasive, and contrary to settled law.

Not previously viewed as a punishment, "[t]he implied consent provisions of the Vehicle Code were enacted to address the hazard of impaired drivers on public roads." *Todd v. Dep't of Transp., Bureau of Driver Licensing*, 723 A.2d 655, 658 (Pa. 1999). As this Court has stated:

> The objective of the Implied Consent Law is to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the highways of this Commonwealth. A further purpose of the Implied Consent Law is to facilitate the acquisition of chemical analyses and to permit their utilization in legal proceedings. The mischief sought to be remedied by the Implied Consent Law is the number of fatalities and injuries which occur every day on our roads as a result of drivers operating vehicles under the influence of alcohol and/or drugs. The objective of preserving the life and health of this Commonwealth's motorists is most important, and the statute should be liberally construed to effect its objective and promote justice.

*Occhibone v. Dep't of Transp., Bureau of Driver Licensing*, 645 A.2d 327, 330–31 (Pa. Cmwlth. 1994), *aff'd sub nom. Occhibone v. Commonwealth*, 669 A.2d 326 (Pa. 1995) (citations and footnote omitted). Contrary to Licensee's suggestion, for which he provides no legal support, the General Assembly intended the Implied Consent

11

Law as a civil penalty intended to protect Pennsylvanians by removing drunk drivers from the road.[8]

Likewise, despite Licensee's suggestions to the contrary, the *Mendoza-Martinez* factors weigh against a determination that the Implied Consent Law provides a sanction so punitive as to transform an intended civil remedy into a criminal penalty.[9]  Regarding the first factor, whether the sanction involves an affirmative disability or restraint, this Court has ruled that a one-year license suspension is not an affirmative restraint akin to incarceration or deportation.  *See Kozieniak v. Dep't of Transp., Bureau of Driver Licensing*, 100 A.3d 326, 331 (Pa. Cmwlth. 2014) (disqualification of a commercial driver's license).  Likewise, the second factor, whether the sanction has historically been regarded as punishment, weighs against Licensee because the suspension of an individual's driving privilege has traditionally been considered a civil sanction as opposed to a criminal punishment.  *Id.* at 331-32.  As to the third factor regarding the necessity of a finding of scienter, DOT need not prove scienter in a refusal-based license suspension appeal.  *See Garlick*, 176 A.3d at 1035.  Regarding the fourth factor, while the goal

---

[8] Licensee also makes a passing reference to *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *cert. denied sub nom. Pennsylvania v. Muniz*, __ U.S. __, 138 S. Ct. 925 (2018), in an apparent effort to equate the civil punishment of a 12-month license suspension upon a DUI conviction with lifetime registration requirements imposed by Pennsylvania's Sex Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10–9799.41, on convicted sexual offenders. *See* Licensee's Brief at 16.  To the extent Licensee raises any argument based on a comparison to *Muniz*, it is waived as undeveloped.  *See Berner v. Montour Twp.*, 120 A.3d 433, 437 n.6 (Pa. Cmwlth. 2015) (ruling that a party's failure to sufficiently develop an issue in a brief constitutes a waiver of the issue).  Waiver aside, we note that any comparison to our Supreme Court's decision regarding lifetime sex offender registration is inapt: the license suspension involved in the instant matter is for a distinct time period in keeping with the General Assembly's goal of protecting its citizens by keeping unsafe drivers off the Commonwealth's highways.

[9] Viewing the determination of a statute as constitutional or otherwise as the function of appellate courts, the trial court declined to engage in a weighing of the *Mendoza-Martinez* factors. *See* Trial Court Opinion at 14-15.

of the Implied Consent Law is to protect the citizens of the Commonwealth by deterring drunk driving, "[r]etribution . . . has not been recognized as a goal of the statute." *Commonwealth v. Abraham*, 62 A.3d 343, 352 (Pa. 2012). The fifth factor asks whether the behavior to which the sanction applies is already a crime. While DUI is a crime, refusing a request for consent to submit to chemical testing is not, and so this factor weighs against Licensee as well. *See Dep't of Transp., Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1348 (Pa. Cmwlth. 1990) ("The implied consent law is not a criminal statute, but a condition precedent to obtaining driving privileges in this [C]ommonwealth."). The sixth and seventh factors concern whether the sanction has an alternative, non-punitive purpose and whether it is excessive in relation to the alternative purpose assigned. Compared to the General Assembly's non-punitive purpose in protecting Pennsylvanians from the dangers of drunk driving, it can hardly be said that temporally limited license suspensions represent excessive penalties.

The trial court's refusal to declare the Implied Consent Law unconstitutional based on Pennsylvania's test for determining whether statutes contain punitive, as opposed to civil, sanctions was neither an error of law nor an abuse of discretion.

For the above reasons, the trial court properly denied Licensee's statutory license suspension appeal. Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge


Judge Cohn Jubelirer did not participate in the decision of this case.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Factor,                          :
                Appellant           :
                                :
       v.                     :
                                :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :    No. 163 C.D. 2018
Bureau of Driver Licensing              :

## O R D E R

AND NOW, this 6th day of December, 2018, the January 11, 2018 order of the Court of Common Pleas of Montgomery County is AFFIRMED.

                                _____

                                CHRISTINE FIZZANO CANNON, Judge