J-A29012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                               :              PENNSYLVANIA
                                               :
                    v.                       :
                                             :
                                             :
JOHN M. CERNICK                    :
                                           :
               Appellant        :    No. 473 WDA 2021

Appeal from the Judgment of Sentence Entered March 22, 2021
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000073-2020

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:        **FILED: January 13, 2022**

Appellant, John M. Cernick, appeals from the judgment of sentence of 72 hours' to 6 months' incarceration, imposed following his conviction on two counts of driving under the influence of a controlled substance (DUI), 75 Pa.C.S. § 3802(d)(1)(i) and (d)(1)(iii). Herein, Appellant challenges the denial of his motion to suppress the results of a warrantless blood draw. After careful review, we affirm.

The facts of this case are not in dispute for purposes of this appeal. Corporal Greg Hoover of the Pennsylvania State Police (PSP) conducted a traffic stop of Appellant's daughter, an unlicensed driver. N.T., 11/25/20, at 6-7. Corporal Hoover ultimately called Appellant and "asked him if he could come to the scene to pick her up…." *Id.* at 8. Corporal Hoover noticed that

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant's speech was slow on the phone and advised him not to come unless he was sober. *Id.* Appellant arrived 20-30 minutes later, driving a Ford pickup truck. *Id.* at 9, 18.

Corporal Hoover's suspicion of Appellant's intoxication only increased upon Appellant's arrival at the scene. The officer observed that Appellant "was just slow to answer questions and he didn't really want to answer questions. And when he did, it was just slow speech and [he] just kept kind of looking around and never really had direct eye contact with me." *Id.* at 10. Further, Corporal Hoover got the impression that Appellant "didn't seem too concerned really about … the whole situation. I mean, just the way he was—his slow speech. It was almost as if he was—like he was tired and just—his actions were very slow." *Id.* Upon further questioning, Appellant denied that he had been drinking. *Id.* at 10-11.

Appellant consented to field sobriety tests, although he told Corporal Hoover that he was tired and that he had issues with his back. *Id.* at 12. Corporal Hoover indicated that Appellant showed further signs of impairment during the tests. *Id.* at 12-15. Additionally, the officer stated that Appellant had glossy and bloodshot eyes, and that "the top of his tongue was green." *Id.* at 15. These signs indicated to Corporal Hoover the possibility that Appellant was under the influence of marijuana. *Id.* When Corporal Hoover asked Appellant if he had recently smoked marijuana, Appellant replied that it had "been a while." *Id.* at 16.

Corporal Hoover arrested Appellant upon suspicion of DUI and transported him to Corry Hospital, where Appellant was read "the warning on the DL-26[B] [form] *verbatim*…." *Id.* at 17. Subsequently, both Corporal Hoover and Appellant signed the form. *Id.* The DL-26B form warned Appellant, *inter alia*, as follows:

> It you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. **If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.**

Commonwealth's Exhibit No. 2 (attached to Appellant's Brief as Appendix B) (emphasis added).

The Commonwealth charged Appellant with two counts of DUI.[1] Appellant filed a motion seeking suppression of the results of the blood draw, which had shown that Appellant had both active and secondary metabolites of marijuana in his system. *See* N.T., 11/25/20, at 30.[2] Specifically, Appellant argued that, under *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), and *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016), the DL-26B form's warning regarding a potential restoration fee of $2,000 constituted a

---

[1] The Commonwealth also charged Appellant with careless driving, 75 Pa.C.S. § 3714, but he was not convicted of that offense.

[2] The parties stipulated to the results of the blood test. *Id.*

threat of a criminal punishment, rendering his consent to the blood test involuntary. *See* Appellant's Omnibus Pretrial Motion, 3/3/20, at 4 ¶ 14.

The trial court issued an order and opinion denying Appellant's motion to suppress on April 23, 2020. The court ruled without the benefit of a suppression hearing, stating that resolution of the suppression motion "did not require a hearing or argument, even assuming the truth of all factual averments therein." Trial Court Opinion (TCO), 4/23/20, at 1 n.2.[3] Following a non-jury trial held on November 25, 2020, the trial court found Appellant guilty of both counts of DUI, and not guilty of careless driving. The DUI offenses merged for sentencing purposes. On March 22, 2021, the trial court sentenced Appellant as stated above.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion on April 25, 2021.[4] Appellant now presents the following question for our review: "Was Appellant's consent to the warrantless blood draw rendered unknowingly, unintelligently[,] or involuntarily, and was it otherwise the product of intimidation, coercion[,] and duress?" Appellant's Brief at 2.

---

[3] Pa.R.Crim.P. 581(E) mandates that a trial court schedule a hearing "in accordance with Rule 577" in response to a motion to suppress. Rule 577(A)(2) confers general discretion to a trial court to determine whether a hearing is required upon the filing of any motion. Appellant does not contest the trial court's decision to rule without the benefit of a hearing in this appeal.

[4] In its Rule 1925(a) opinion, the trial court indicated that it was relying on the reasoning set forth in the TCO for denying Appellant's suppression motion. *See* Rule 1925(a) Opinion, 4/25/21, at 1-2.

Appellant asks this Court to reverse the order denying his motion to suppress the blood draw.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa. Super. 2012) (cleaned up).

Specifically, Appellant maintains that his consent to the warrantless blood draw in this case was invalid under *Birchfield* and *Evans*, arguing that the potential of a $2,000 restoration fee referenced in the DL-26B "is so punitive in purposes and effect as to violate [A]ppellant's state and federal right to be free from unreasonable warrantless searches and seizures." Appellant's Brief at 4. In *Birchfield*, the Supreme Court of the United States concluded that "the search incident to arrest doctrine does not justify the warrantless taking of a blood sample[.]" *Birchfield*, 136 S.Ct. at 2185. Furthermore, the *Birchfield* Court held "that motorists cannot be deemed to

- 5 -

have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

> Thereafter, this Court decided … *Evans* …, in which the appellant had … argued that his consent to blood testing after his arrest for DUI was coerced as he only consented after the police warned him that his refusal to submit to blood testing would result in harsher penalties upon conviction. Although the *Evans* [C]ourt recognized that Pennsylvania's implied consent law did not make refusal to submit to a blood test a crime, the panel emphasized that the law "undoubtedly impose[s] criminal penalties on the refusal to submit to a test." *Evans*, 153 A.3d at 331 (quoting *Birchfield*, 136 S.Ct. at 2185–86). This Court pointed … to the DUI penalty provisions set forth in 75 Pa.C.S.[] § 3804:
>
>> Section 3804(c) provides that an "individual who violates [S]ection 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)—and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.[] § 3804(c). As such, *Birchfield* controls the case at bar.
>
> *Id.*
>
> Since the appellant in *Evans* had argued that he agreed to submit to blood testing only after being informed that harsher penalties would apply if he refused, this Court held that the officer's advisory to Evans was "partially inaccurate" as *Birchfield* prohibits states from imposing criminal penalties for the refusal to submit to blood testing. [*Id.*] at 331. As a result, this Court vacated [Evans]'s sentence and the suppression order and remanded with instructions for the trial court to reevaluate the voluntariness of [his] consent in light of this inaccurate warning and the totality of the circumstances.

*Commonwealth v. Smith*, 177 A.3d 915, 921 (Pa. Super. 2017).

> Instantly, Appellant argues that he
>
> consented to a blood draw only after he was read Form DL-26[B] and advised that refusal to consent would result in certain penalties, including "a restoration fee of up to $2,000."

> [Appellant]'s consent was invalid under **Birchfield** and **Evans**. Despite the General Assembly's categorizing the $2,000 assessment as a "civil" penalty and labeling it a "fee," it is actually a fine, *i.e.*, criminal punishment. [Appellant], therefore, only consented to a blood draw upon being threatened with criminal punishment.

Appellant's Brief at 6 (citation omitted). Thus, Appellant contends that, like the defendant in **Evans**, he is entitled to relief because the warning he was read from the DL-26B form misrepresented the consequences of refusal by presenting a *de facto* criminal punishment as a civil restoration fee.

The trial court rejected the premise of Appellant's claim that the potential $2,000 fee was more akin to a criminal punishment than a civil penalty. Applying the seven-factor test set forth in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963), the trial court found that most of the **Mendoza-Martinez** factors weighed against finding the potential $2000 restoration fee to be punitive rather than civil in nature. **See** TCO at 10 ("On balance, therefore, [the potential $2,000 fee] is not so punitive as to negate its designation as a civil penalty."). Consequently, the trial court determined that there is "no merit to [Appellant]'s argument that his consent was based upon inaccurate warnings." **Id.** at 11.

In supporting the reasoning of the trial court, the Commonwealth notes that this Court rejected similar arguments concerning the restoration fee in two recent, but non-precedential decisions in **Commonwealth v. Verbeck**, 253 A.3d 266 (Pa. Super. 2021) (unpublished memorandum), and **Commonwealth v. Smith**, 245 A.3d 1078 (Pa. Super. 2020) (unpublished

memorandum).[5]  The Commonwealth urges this Court "to follow the rationale in these previous cases…."  Commonwealth's Brief at 12.

We agree with the trial court that the restoration fee referenced in the DL-26B form does not constitute a *de facto* criminal punishment and, in reaching that conclusion, we adopt the trial court's thorough and well-reasoned analysis as our own.[6]  **See** TCO at 3-11.  Consequently, because the restoration fee is not a *de facto* criminal punishment despite its designation as a civil penalty, we conclude that Appellant is not entitled to relief under **Birchfield** and **Evans**.  Thus, we conclude that the trial court did not err in denying Appellant's motion to suppress the results of the warrantless blood draw.

Judgment of sentence **affirmed**.

Judge Bowes joins this memorandum.

Judge Pellegrini concurs in the result.

_____

[5] "Non-precedential decisions … may be cited for their persuasive value." Pa.R.A.P. 126(b)(2).

[6] Although this Court's decisions in **Verbeck** and **Smith** also concluded that the potential $2,000 restoration fee mentioned in form DL-26B is a civil penalty rather than a criminal punishment, those decisions addressed somewhat different arguments than those presented by Appellant. Accordingly, as Appellant's arguments were more directly addressed by the trial court in its analysis under **Mendoza-Martinez**, we do not rely on either **Verbeck** or **Smith** for their persuasive value in reaching our disposition in this case.

J-A29012-21

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2022

**FILED**

2020 APR 23 PM 3: 44

CLERK OF COURTS
CRAWFORD COUNTY, PA

IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:
v. : No. CR 73 – 2020
:
JOHN MATTHEW CERNICK, :
Defendant :

## MEMORANDUM and ORDER

John F. Spataro, J.

The Defendant, John Matthew Cernick ("Cernick"), has filed an omnibus pretrial motion *nunc pro tunc* to suppress test results obtained after he consented to having his blood drawn following a traffic stop on September 27, 2019.[1] His motion will be denied for the reasons stated in this memorandum.[2]

### CERNICK'S MOTION

Cernick's blood was drawn after he was read the Pennsylvania Department of Transportation's new DL-26B form, warning him that refusing to submit to chemical testing would result in the suspension of his operating

---

[1] Cernick had filed, on February 7, 2020, a written waiver of his appearance at formal arraignment, scheduled for February 14, 2020, and the motion was filed within thirty days thereafter, on March 3, 2020. *See* Pa.R.Crim.P. 579(A), 581(B); Cra.R.Crim.P. 571(2)(b).

[2] The undersigned has determined that the motion does not require a hearing or argument, even assuming the truth of all factual averments therein. *See* Pa.R.Crim.P. 581(E), 577(A)(2).

privileges, and a fee of up to two thousand dollars to have them restored.[3,4] Cernick contends that the restoration fee is in actuality a fine, despite being labeled a civil penalty.[5] Fines, he asserts, constitute criminal punishment. *Commonwealth v. Rivera*, 95 A.3d 913, 916 (Pa. Super. 2014) (distinguishing fines from costs and restitution, which are "designed to have the defendant make the government and the victim whole") (quoting *Commonwealth v. Wall*, 867 A.2d 278, 583 (Pa. Super. 2005). The restoration fees' criminal nature, he adds, is highlighted by its recidivist structure.[6] *See A.S. v. Pennsylvania State Police*, 636 Pa. 403, 423-24, 143 A.3d 896, 908 (2016) (Donahue, J., concurring) ("a statute embodying a recidivist philosophy evinces a legislative intent 'to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline.'") (quoting *Commonwealth v. Dickerson*, 533 Pa. 294, 299, 621 A.2d 990, 992 (1993)). The fee provisions of Section 1547 were only added, he notes, after sentencing enhancements for refusal were invalided. *See Commonwealth v. Giron*, 155 A.3d 635, 639-40 (Pa. Super. 2017); 75 Pa. C.S. §§ 3803, 3804.

---

[3] The restoration fee is one of the penalties for refusal mandated by the implied consent law, 75 Pa.C.S. § 1547.

[4] The DL-26B form read by the arresting officer is not, as indicated in the motion (¶ 2), attached as an exhibit. Its absence is inconsequential because the statute requires "the police officer to inform the person that: (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000 ...." 75 Pa.C.S.A. § 1547(b)(2)(i). Cernick avers that he consented *after* being read the DL-26B form. *Id*. ¶¶ 2, 7. If his consent preceded its reading, there would be no basis for suppression. *See Commonwealth v. Moser*, 188 A.3d 478, 482-83 (Pa. Super. 2018).

[5] Subsection (b) is titled, "Civil penalties for refusal."

[6] The fee increases from $500 to $1,000 for a prior suspension under Section 1547, and $2,000 for two or more prior suspensions. 75 Pa.C.S. § 1547(b.2)(1).

2

A criminal penalty for not consenting to a blood draw, Cernick continues, is unlawful under *Birchfield v. North Dakota*, 579 U.S. —, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). He was, therefore, misinformed when read the DL-26B form as to the possible penalties for refusing chemical testing. He concludes that his consent is invalidated by this misinformation, and that the warrantless blood draw was, consequently, an illegal search of his person, and thus his blood test results must be suppressed. *See Commonwealth v. Strickler*, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000) ("A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies"); *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016).[7]

## DISCUSSION

A fee, as Cernick notes, has been defined as "[a] charge or payment for labor or services." Black's Law Dictionary 732 (10th ed. 2014); Mot. § 9. The restoration fee, he asserts, "has nothing to do with any actual costs incurred by the government as a result of the refusal of blood testing or the reinstatement of a driver's license." Mot. § 11. His contention is belied by the fact, as he concedes, that a fee is always charged "to restore a person's

---

[7] Cernick erroneously contends that the Superior Court held in *Evans* "that blood test results obtained through consent must be suppressed where the defendant 'only consented to the warrantless blood draw after being [mis]informed, by the police, that refusal to submit to the test could result in enhanced criminal penalties.'" Motion ¶ 6. The *Evans* Court, however, instead "remand[ed] the case to the trial court to 'reevaluate [Appellant's] consent ... [, based upon] the totality of all the circumstances ... [and] given the partial inaccuracy of the officer's advisory. *Birchfield*, 136 S.Ct. at 2186." The Superior Court has subsequently held, however, that "*Birchfield* makes plain that the police may not threaten enhanced punishment for refusing a blood test in order to obtain consent." *Commonwealth v. Ennels*, 167 A.3d 716, 724 (2017).

operating privilege ... following a suspension." *Id.* § 12; 75 Pa.C.S. §§ 1379(c), 1380, 1786(d), 1960; *see Rossi v. Dep't of Transp., Bur. of Driver Licensing,* 580 Pa. 238, 860 A.2d 64 (2004) (operating privileges remain suspended until administrative steps, including payment of the restoration fee, are completed); *Burgess v. Dep't of Transp., Bur. of Driver Licensing,* 991 A.2d 1014 (Pa. Cmwlth. 2010) (license suspension did not end until the restoration fee was paid). The fee thus relates to a service performed by PennDOT.

Being a monetary amount does not convert the fee into a "fine," which, in any event, has been defined as "[a] pecuniary criminal punishment or civil penalty payable to the public treasury." Black's Law Dictionary 750 (10th ed. 2014) (emphasis added). Cernick's reliance upon *Rivera* in declaring the fee to be punishment is misplaced. Mr. Rivera had been ordered at sentencing to pay $500 for the "cost of the Public Defender's representation." The Superior Court, in vacating his sentence, held that this assessment did not qualify as an allowable "fine" under the Sentencing Code[8] because it was "not intended to 'punish' Rivera or ensure that he 'does not receive a pecuniary gain from the offense." 95 A.3d at 916. The restoration fee likewise has nothing to do with any pecuniary gain from refusing a blood draw, and even civil penalties may be said to "punish." The fee also is not, as in *Rivera*, imposed by a judge upon a criminal conviction, but rather on the refusal to comply with a condition placed upon the exercise of operating privileges.

---

[8] A court, as a condition of probation, "may require the defendant ... to pay such fine as has been imposed." 42 Pa.C.S. § 9754(c)(11).

It is for this reason that *Wall* is equally inapposite. The *Wall* Court applied a direct *versus* collateral consequence analysis in evaluating a monetary "cost" imposed upon conviction for driving under the influence (DUI) of alcohol. 867 A.2d at 581-82 ("Historically, courts have reviewed analogous monetary measures imposed at sentencing, *i.e.*, costs, fines, or restitution, under a direct or collateral consequence analysis to determine if the measure constitutes punishment."). The assessment there was found to constitute punishment because it was a direct consequence of the appellant's sentence.

The proper method "for determining whether a statute is so punitive as to negate a legislature's intention to identify the scheme as civil" is to consider the factors listed in *Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).[9] *Commonwealth v. Butler*, — A.3d —, 2020 WL 1466299, No. 25 WAP 2018 (Pa. March 26, 2020) (holding that newly enacted lifetime registration, notification, and counseling (RNC) requirements applicable to felons adjudicated sexually violent predators (SVPs) were not punitive);[10] *accord Commonwealth v. Abraham*, 619 Pa. 293, 306-9, 62 A.3d 343, 351-53 (2012) (forfeiture of teacher's pension was "not so punitive in force or effect

---

[9] The seven factors are "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." 372 U.S. at 168-69, 83 S.Ct. at 568 (footnotes omitted).

[10] There is ordinarily a two-stage process, with an initial inquiry as to whether the Legislature intended the scheme to be nonpunitive. *See* 2020 WL 1466299 at *10-*11. The first step is unnecessary here due to the designation of the fee as a civil penalty. *See* n.5, *supra*.

as to negate the legislative intent that it be a civil, remedial provision"); *Factor v. Dep't of Transp., Bur. of Driver Licensing,* 199 A.3d 492, 500 (Pa. Cmwlth. 2018) (finding the sanction of a one year driver's license suspension for refusing to consent to chemical testing was not "so punitive as to transform an intended civil remedy into a criminal penalty"). The implied consent law's entire statutory scheme must be considered in weighing these seven factors. *Butler,* 2020 WL 1466299 *11 (quoting *Commonwealth v. Muniz,* 640 Pa. 699, 732, 164 A.3d 1189, 1208 (2017)).

## Weighing the *Mendoza-Martinez* Factors

The imposition of an enhanced restoration fee does not, in regard to the first factor, involve an affirmative disability or restraint. *See, e.g., Kozienlak v. Dep't of Transp., Bur. of Driver Licensing,* 100 A.3d 326, 331 (2014) (one year license suspension "is not an affirmative restraint, such as incarceration and deportation"). The fee instead removes a disability caused by the suspension of a privilege, and not a constitutional right. *Commonwealth v. Bell,* 167 A.3d 744, 747 (Pa. Super. 2017) ("Our courts have established that driving is a privilege, not a fundamental right."), *aff'd,* 211 A.3d 761 (Pa. 2019). Restoration of operating privileges by payment of the fee is, moreover, entirely optional.

Regarding the second factor, a fee has not historically been considered punishment. *See Rivera, supra.* As noted above, a restoration fee is assessed regardless of the circumstances under which operating privileges have been

6

withdrawn. The fee is linked to a license suspension, which historically has not been regarded as punishment – even when resulting from a criminal conviction. *Commonwealth v. Duffey*, 536 Pa. 436, 440, 639 A.2d 1174, 1176 (1974) ("Courts of this Commonwealth have consistently recognized that a license suspension is a collateral civil consequence of a criminal conviction."); *Factor*, 199 A.3d at 498 ("we note that this Court has definitively stated that license suspensions imposed pursuant to the Implied Consent Law are civil, not criminal, sanctions"); *see also, e.g., Kozieniak, supra* (applying the *Mendoza-Martinez* favors and finding that a one-year disqualification from holding a commercial driver's license was a civil rather than punitive penalty for DUI – high rate of alcohol); *Commonwealth v. Wolfe*, 684 A.2d 642, 454 Pa.Super. 93 (1996) (driver's license suspension for refusal to consent to chemical testing is a civil sanction).

As for the third factor, the fee does not "come into play only on a finding of scienter,"[11] because it is not based upon criminal conduct, but rather the exercise of a statutory right of refusal. *See* 75 Pa.C.S. § 1547(b)(2);[12] *Factor*, 199 A.3d at 501 (this factor weighs against a determination that the implied consent law is punitive because "[Penn]DOT need not prove scienter in a refusal-based license suspension appeal"); *cf. Butler*, 2020 WL 1466299 *14

---

[11] *Butler* defines scienter "as '[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission[.]'" 2020 WL 1466299 at *10 n.10 (quoting Black's Law Dictionary).

[12] Subsection (b)(2) provides that "[I]f any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted ...."

("the imposition of the RNC requirements is not based upon criminal conduct at all [as it is] 'based on a mental abnormality or personality disorder rather than one's criminal intent'"). No conviction is needed for its imposition, and the motorist need not be aware of a possible DUI violation before being asked to provide a blood sample.[13]

The fourth factor is whether the fee promotes retribution or deterrence. Retribution has been defined as "[s]omething justly deserved; repayment; reward," and deterrence as "the prevention of criminal behavior by fear of punishment." Black's Law Dictionary 1511, 544 (10th ed. 2014). The enhanced fee does not involve a repayment or reward, and it deters the statutorily-given right of refusing a blood draw, rather than a criminal act. It only indirectly promotes the implied consent law's goal of deterring DUI. See Birchfield, 136 S.Ct. at 2166. The prospect of paying an "up to" $2,000 fee sometime in the future is also surely much less a deterrent for refusing consent than being automatically disqualified from driving for a year or longer. This factor should thus be afforded little, if any, weight. Cf. Butler, 2020 WL 1466299 *14 ("the RNC requirements do not promote deterrence [from committing additional sexual crimes]").

---

[13] The Court acknowledges that the arrestee must be aware of the option of refusal. See Commonwealth v. Myers, 640 Pa. 653, 686, 164 A.3d 1162, 1181 (2017) (unconscious arrestee had no "opportunity to make a 'knowing and conscious choice' regarding whether to undergo chemical testing or to exercise his right of refusal."). Scienter, however, refers to a knowledge of guilt or culpable mental state, not mere consciousness, and does not encompass a knowing exercise of statutory rights. See 41 Am. Jur. 2d Indictments and Informations § 118 (2020).

The fifth factor – whether the behavior to which the fee applies is not already a crime – is answered in the negative, because Cernick is not charged with violating Section 1547. *See* 75 Pa.C.S. § 1547(b)(2) (permitting refusal); *Factor*, 199 A.3d at 501 ("While DUI is a crime, refusing a request for consent to submit to chemical testing is not....").

For the sixth factor, there can be assigned, as an alternative non-punitive purpose to which the enhanced fee may rationally be connected, the government's interest in protecting the public from impaired drivers (as well as in receiving compensation for its added administrative and regulatory burdens). "Reason dictates" that a higher fee should be collected for having avoided the obligation of consenting to chemical testing, which was designed to protect public safety. *See Butler*, 2020 WL 1466299 *15 (RNC requirements are rationally connected to "the heightened public safety concerns applicable to SVPs").

The seventh and final factor is whether the enhanced fee appears excessive in relation to the non-punitive purposes of protecting the public. We note initially that while the standard restoration fee is seventy dollars, a higher fee ($88) is also charged for suspensions for unpaid parking violations or tolls, or lack of proof of required financial responsibility. 75 Pa.C.S. § 1960. An increased fee linked to refusal is not, therefore, inappropriate.

Vehicle Code fines are excessive if they are "irrational or unreasonable." *Commonwealth v. Smith*, 409 Pa. 521, 526, 187 A.2d 267, 270 (1963) (tying

the charge for overweight vehicle to the amount of excess weight was "quite sensible"). The higher fee accompanying repeat refusal-based suspensions rationally mirrors their extended length, and doubling the fee after a first and then a second suspension quite sensibly discourages unsafe driving. *See* 75 Pa.C.S. § 1547(b)(1) (increasing the suspension period from twelve months to eighteen months for previous refusals). A fee of five hundred to two thousand dollars is certainly substantial, but is not confiscatory. *Cf. Factor*, 199 A.3d at 501 ("Compared to the General Assembly's non-punitive purpose in protecting Pennsylvanians from the dangers of drunk driving, it can hardly be said that temporally limited license suspensions represent excessive penalties."); *Sondergaard v. Dep't of Transp.; Bureau of Driver Licensing*, 65 A.3d 994, 997 (Pa. Cmwlth. 2013) (agreeing with appellee [without engaging in a *Mendoza-Martinez* analysis] that the lifetime revocation of a commercial driver's license for two DUI convictions turned a remedial law into a penal law, because the license holder lost the right to practice their chosen profession); *Commonwealth v. Heggenstaller*, 699 A.2d 767, 769 (Pa. Super. 1997) ($6,550 fine for failing to pay 911 fee of $1.25/month for 23 months was excessive considering the de minimus nature of the violation).

A base level of $500 and the fee's slight DUI-deterrent effect are thus the only considerations weighing even somewhat in favor of finding the fee to be punitive. On balance, therefore, Section 1547(b.2) is not so punitive as to negate its designation as a civil penalty. *See Butler*, 2020 WL 1466299 at *11

("only the 'clearest proof' may establish that a law is punitive in effect.") (quoting *Muniz*, 164 A.3d at 1208); *Commonwealth v. Williams*, 574 Pa. 487, 506, 832 A.2d 962, 973 (Pa. 2003) ("we understand the 'clearest proof' standard to indicate that the *Mendoza-Martinez* factors must weigh heavily in favor of a finding of punitive purpose or effect in order to negate the General Assembly's intention that [Megan's Law II] be deemed civil and remedial.").

Because the restoration fee is not a criminal penalty for refusal, there is no merit to Cernick's argument that his consent was based upon inaccurate warnings.[14] Accordingly, we enter the following:

### ORDER

AND NOW, April 23, 2020, the Defendant's "Omnibus Pretrial Motion" is DENIED.

BY THE COURT,

John F. Spataro, P.J.

cc: D.A.
J. Wesley Rowden, Esq., P.D.

---

[14] Also flawed his assertion that "[I]n light of *Birchfield*, the Pennsylvania Superior Court recognized the impropriety of punishing those who refuse blood tests more severely than those who consent," and are convicted. Mot. ¶ 14 (citing *Giron, supra*). Refusal suspensions can be more onerous than conviction suspensions. *Compare* 75 Pa.C.S. § 3804(e) (as little as no suspension of operating privileges upon conviction [if no prior offense], or only six or twelve months), *with Id.* § 1547(b)(1) (automatic suspension for twelve or eighteen months).