# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Steven J. Meyers | : |
| | : |
| | : |
| | : |
| v. | : No. 33 C.D. 2022 |
| | : Submitted: February 3, 2023 |
| Commonwealth of Pennsylvania, | : |
| Department of Transportation, | : |
| Bureau of Driver Licensing, | : |
| Appellant | : |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER       FILED: March 20, 2024**


The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department), appeals from an Order of the Court of Common Pleas of Cambria County (trial court) sustaining an appeal of Steven J. Meyers (Licensee) from the Department's suspension of his driver's license. Department argues the trial court erred as a matter of law in concluding Licensee did not refuse to submit to a chemical test. Although this is a challenging case, consistent with our precedent we find that Licensee's silence was a refusal and, therefore, we reverse.

Officer Nathan Homyak (Officer Homyak) arrested Licensee for suspected driving under the influence. (Trial Court Opinion (Trial Ct. Op.) at 1-2.) Department suspended Licensee's driver's license for a period of 18 months based

on Licensee's refusal to submit to a chemical test of blood and Licensee's previous arrest for driving under the influence pursuant to Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(ii), also known as the Implied Consent Law. (Official Notice of Suspension, Reproduced Record (R.R.) at 7a.) Licensee appealed, and the trial court held a hearing on October 29, 2021. (Trial Ct. Op. at 1.) Department presented Officer Homyak of the Johnstown Police Department as its witness, and Licensee testified as well. The trial court found the facts as follows.

Officer Homyak stopped Licensee after observing Licensee perform a "burnout." (Findings of Fact (FOF) ¶ 1.) During the stop, Officer Homyak observed that Licensee smelled of alcohol, slurred his speech, and had an unsteady gait. (*Id.* ¶ 2.) Licensee was verbally "belligerent[]" and "did not want to complete field sobriety tests." (*Id.* ¶¶ 3-4.) Officer Homyak then placed Licensee in custody and took Licensee to a hospital for a chemical test of his blood. (*Id.* ¶ 5.) "Either before Officer Homyak started to read or before he completed reading the Chemical Testing Warnings [(DL-26 form)] to [Licensee], [Licensee] indicated that he would not give blood for a chemical test." (*Id.* ¶ 6.) Licensee "continued to behave in a generally disruptive manner" at the hospital, but Officer Homyak was able to read the entirety of the DL-26 form to Licensee. (*Id.* ¶ 7.) "After Officer Homyak finished reading the DL-26 form, [Licensee] remained silent for approximately 30 seconds. At this time, Officer Homyak informed [Licensee] that [Licensee's] silence was deemed to be a refusal to submit to a chemical test of blood." (*Id.* ¶ 8.) Once Officer Homyak told Licensee his silence constituted a refusal, Licensee told Officer Homyak that he would provide a blood sample. (*Id.* ¶ 9.) Officer Homyak and a nurse then completed paperwork for Licensee's refusal, which took one or two minutes. (*Id.* ¶ 10.) The trial court found:

It is unclear whether [Licensee] told Officer Homyak he would submit to a chemical test of blood (1) immediately after Officer Homyak told [Licensee] that his silence was deemed to be a refusal, or (2) only after Officer Homyak had begun or otherwise completed the paperwork pertaining to [Licensee]'s refusal. Neither party established a more concrete timeframe by a preponderance of the evidence.

(*Id.* ¶ 9 n.1.) Approximately 90 to 150 seconds elapsed between Officer Homyak reading Licensee the DL-26 form and Officer Homyak completing the paperwork pertaining to Licensee's refusal. (*Id.* ¶ 11.)

After the hearing, the parties submitted briefs to the trial court. Based on the hearing and the parties' briefs, the trial court sustained Licensee's appeal. The trial court issued an opinion explaining its reasoning:

> In the cases the [Department] cites, the licensee either made a physical act indicating (confirming) a refusal in conjunction with his or her silence or was afforded at least one of the following: (1) multiple readings of the DL-26 form, or (2) considerably more time to determine whether to comply. Confirmation of silence as a refusal can be as simple as telling the licensee that continued silence will be deemed to be a refusal. . . .
>
> Under all of the circumstances of this case, this [c]ourt holds that [Licensee] was not permitted a meaningful opportunity to submit to chemical testing as there was no confirmation of [Licensee]'s refusal. This [c]ourt emphasizes the following facts in reaching its conclusion: (1) [Licensee] was only afforded approximately 30 seconds to determine whether to comply after being read the DL-26 form, and (2) [Licensee] made no oral statements or took no physical action confirming his refusal after the DL-26 form had been read in its entirety. . . . Here, [Licensee]'s approximately 30 seconds of silence was ambiguous, i.e., [Licensee] could have been thinking about whether to comply or intending to refuse through obstinance; and there was no confirmation of [Licensee]'s refusal.
>
> [Licensee]'s unruly conduct **prior** to being read the DL-26 form and his disruptiveness **while the form was being read** are not sufficient to deem a mere 30-second silence to be a refusal (absent something more). To hold that approximately 30 seconds of silence following the reading

3

of the DL-26 form – **absent something else occurring after the form has been read** – strays dangerously close to holding that a licensee must instantaneously submit to a chemical test upon request.

(*Id.* at 5-6 (emphasis in original).)

On appeal to this Court,[1] the Department argues that the trial court erred as a matter of law in concluding that Licensee did not refuse chemical testing through his conduct, and that Licensee's subsequent assent to a blood test did not invalidate his refusal. (Department's Brief (Br.) at 17.) The Department argues that "[Licensee's] failure to respond to Officer Ho[m]yak's request for a blood test, after the officer finished warning [Licensee] that remaining silent would be deemed a refusal, was the culmination of [Licensee's] lengthy course of bad conduct that night." (*Id.* at 18.) The Department further contends that the DL-26 form specifically warns licensees that silence will be deemed a refusal. (*Id.* at 22-23.)

Licensee responds that the trial court correctly sustained Licensee's appeal because there was substantial evidence for the trial court to conclude that Licensee's 30-second period of silence after Officer Homyak read the DL-26 form did not constitute a refusal. (Licensee's Br. at 2.) Licensee argues that the 30-second delay was not "substantial[,]" and a licensee must be given a "meaningful opportunity" to consent to a chemical test, which did not happen here. (*Id.* at 5.)

Section 1547 of the Vehicle Code states, in relevant part:

(a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of

---

[1] In reviewing a driver's license suspension appeal, "[o]ur standard of review is limited to determining whether [the trial court] committed an error of law, whether [the trial court] abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018).

blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . . 3802 [of the Vehicle Code, 75 Pa.C.S. § 3802] (relating to driving under influence of alcohol or controlled substance). . . .

(b) Civil penalties for refusal.--

(1) If any person placed under arrest for a violation of [S]ection 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person. . .

. . . .

(ii) For a period of 18 months if any of the following apply:

(B) The person has, prior to the refusal under this paragraph, been sentenced for:

(I) an offense under section 3802.

75 Pa.C.S. § 1547(a), (b)(1)(ii)(B)(I) (emphasis omitted).  Further,

[t]o sustain a license suspension under Section 1547(b) of the Vehicle Code, [the Department] has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension.  Once [the Department] meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013).  The Department must also show that the police officer gave the licensee a "meaningful opportunity" to submit to a chemical test.  *Grogg v. Dep't*

5

*of Transp., Bureau of Driver Licensing*, 79 A.3d 715, 718 (Pa. Cmwlth. 2013). If a licensee is provided with such opportunity, our Court has long held that anything other than an unequivocal assent to a chemical test is a refusal. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018). This Court has also held that a licensee's silence after being read the DL-26 form will constitute a refusal. *Dep't of Transp. v. Renwick*, 669 A.2d 934, 936 n.2 (Pa. 1996); *Grogg*, 79 A.3d at 719; *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 21-22 (Pa. Cmwlth. 2010); *Broadbelt v. Dep't of Transp., Bureau of Driver Licensing*, 903 A.2d 636, 641 (Pa. Cmwlth. 2006). Whether a licensee's conduct constitutes a refusal to submit to a chemical test is a question of law reviewable by this Court. *McKenna v. Dep't of Transp., Bureau of Diver Licensing*, 72 A.3d 294, 298 (Pa. Cmwlth. 2013).

Licensees need not "instantaneously" submit to a chemical test upon request. *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). "In determining whether a licensee had a sufficient opportunity to submit to testing, the number of passing minutes between the time the officer reads the DL-26 [f]orm and the deemed refusal is irrelevant, so long as a licensee's conduct evidences a refusal." *Lukach v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1456 C.D. 2017, filed June 4, 2018), slip op. at 7 (internal quotations and citation omitted);[2] *see Nardone*, 130 A.3d at 751 (holding that the licensee had a meaningful opportunity to submit but refused a chemical test when the licensee requested an alternative form of testing after the officer read the DL-26 form, even though the

---

[2] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b)(1)-(2), Pa.R.A.P. 126(b)(1)-(2), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

exchange only lasted 60 seconds); *Moody v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 864 C.D. 2021, filed May 9, 2023), slip op. at 8 (holding the licensee had a meaningful opportunity to submit but refused a chemical test when over the course of five to six minutes the officer read the DL-26 form twice, the licensee asked no questions, and the licensee remained silent); *Rickards v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1225 C.D. 2019, filed May 26, 2020), slip op. at 17 (holding that the licensee had a meaningful opportunity to submit to a chemical test when the licensee read the first half of the DL-26 form silently for 20 seconds, read the latter half out loud, and remained silent when the police officer asked multiple times if the licensee would submit); *Broadbelt*, 903 A.2d at 641 (holding that the licensee had a meaningful opportunity to submit to chemical testing and ultimately refused by silence when he had 12 minutes to consider the DL-26 form warnings, never indicated that he did not understand the warnings, and there were no distractions impeding the licensee from comprehending the warnings). "[P]olice officers are not required to spend time either cajoling a[ licensee] or waiting for [them] to change [their] mind." *Grogg*, 79 A.3d at 719. Rather, police officers are required to inform licensees of the consequences of a refusal. *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 877 (Pa. 1989).

Here, Licensee was silent for 30 seconds after Officer Homyak read the DL-26 form, which states that if Licensee remained silent, his silence would be deemed a refusal. (Department's Exhibit 1, Item #2.) Whether a licensee refused a chemical test is a question of **law**. The trial court does find the facts, but, contrary to Licensee's assertions, this Court is not bound to confirm the legal conclusion as reached by the trial court based on those facts if the trial court's application of the

7

law was in error. All that was required of Officer Homyak was that he read the DL-26 form, which informed Licensee of the consequences for refusal, and give Licensee a **meaningful opportunity** to submit. *O'Connell*, 555 A.2d at 877; *Grogg*, 79 A.3d at 718. Officer Homyak waited at least 30 seconds after reading Licensee the DL-26 form before deeming Licensee's silence as a refusal; this was a meaningful opportunity to submit.[3] Officer Homyak was not required to cajole Licensee to submit or wait for Licensee to change his mind. *Grogg*, 79 A.3d at 719.

---

[3] We recognize the trial court's assertion that to hold 30 seconds constitutes a meaningful opportunity to submit "strays dangerously close to holding that a licensee must instantaneously submit to chemical testing upon request." (Trial Ct. Op. at 5-6.) However, 30 seconds to respond to the single question, whether Licensee would submit to a blood test or face a suspension of his operating privilege should he refuse, particularly when Licensee had no right to confer with an attorney or anyone else, was a reasonable opportunity under these circumstances. While 30 seconds may sound like a short amount of time, it has been considered sufficient to enable someone to identify a defendant and to respond in knock-and-announce situations. For instance, in *State v. Portillo*, (N.J. Super., No. A–0679–16T3, filed June 11, 2018), 2018 WL 2924234, on appeal from a conviction for armed robbery, the defense argued the prosecutor's statement in her closing argument that "[30] seconds was sufficient time to enable the victims to identify [the defendant]" was improper. *Portillo*, 2018 WL 2924234, at *4. In the prosecutor's closing argument, to illustrate the passage of time, the prosecutor "stood silent while she allowed [30] seconds to elapse" and then stated to the jury that "'[t]he [30] seconds is up. . . . [30] seconds is more than enough time to be able to look at somebody, stare at them . . . remember their face an hour later, [and] remember their face [5] years later.'" *Id*. On appeal, the Superior Court of New Jersey held "[t]he prosecutor did not mislead the jury, nor did the prosecutor purport to instruct the jury. . . . [There was] nothing improper in the prosecutor's argument." *Id*. *See also People v. Calles*, 147 Cal. Rptr. 3d 673, 685 (Cal. Ct. App. 2012) ("By comparing the passage of 30 seconds on a watch with the evidence of the events, the jury applied a natural phenomenon—the passage of time."). Furthermore, in the knock-and-announce context, a 20-second wait after announcing one's presence and requesting entry during execution of a search warrant in an alleged bookmaking operation was held to be reasonable to conclude admittance was being denied. *See People v. Elder*, 134 Cal. Rptr. 212, 216 (Cal. Ct. App. 1976) ("Twenty seconds is not a flash of time allowing for no response at all.").

Here, Officer Homyak and Licensee sat in silence for at least 30 seconds after Officer Homyak read Licensee the DL-26 form. Considering the duration of 30 seconds, this was enough time for Licensee to comprehend the DL-26 form Officer Homyak had just read to him and respond.

Licensee did not ask any questions or otherwise indicate that he would take a test during his period of silence, and Officer Homyak had no duty to confirm that Licensee's silence was a refusal.  If we were to accept the trial court's conclusion that Officer Homyak needed to do, or wait for Licensee to do, "something else" before deeming Licensee's silence as a refusal, Trial Ct. Op. at 5-6,  silence would never be able to be considered a refusal, which goes against our well-settled caselaw.[4]  *Renwick*, 669 A.2d at 936 n.2; *Grogg*, 79 A.3d at 719; *Sitoski*, 11 A.3d at 21-22; *Broadbelt*, 903 A.2d at 641.

Under the circumstances, as found by the trial court, Licensee refused chemical testing.  Licensee first refused a chemical test either while or before Officer Homyak read the DL-26 form and otherwise acted belligerent leading up to that moment.  After Officer Homyak read the DL-26 form specifically warning Licensee

---

[4] The dissent explains that in cases where we have found silence to constitute a refusal, "the arresting officer made multiple readings of the DL-26 form over periods of time ranging from 6 to 12 minutes and the licensee's conduct physically demonstrated a refusal[,]" which did not occur here.  *Meyers v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 33 C.D. 2022, filed March 20, 2024), slip op. at 5 (Leavitt, S.J., dissenting).  The dissent also cites *McDonald v. Department of Transportation, Bureau of Driver Licensing*, 708 A.2d 154 (Pa. Cmwlth. 1998), for the proposition that a meaningful opportunity to submit includes an opportunity to ask questions.  *Id.*  In *McDonald*, the Court concluded "when a licensee delays a decision because of confusion as to his or her rights and then assents to submit to a chemical test when those rights are made clear[,]" this is not a refusal.  708 A.2d at 156 (citation omitted).  All that is required of an officer is that he **read** the DL-26 form to a licensee and give the licensee a **meaningful opportunity** to submit.  *O'Connell*, 555 A.2d at 877; *Grogg*, 79 A.3d at 718.  Officer Homyak read the entire DL-26 form to Licensee and waited at least 30 seconds for Licensee to answer the single question posed, give any indication of consent, or ask questions.  While Licensee did not turn his head away, close his eyes, request his handcuffs be removed, or swear in this time, like the licensees in the cases upon which the dissent relies, Licensee also did not exhibit any behavior that would indicate consent, nor did he ask any questions about his rights; Licensee only sat in silence after being read the DL-26 form, which specifically warns that silence will constitute refusal.  (*See* Department's Exhibit 1, Item #2.)  It is well settled that "**anything** less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto."  *Factor*, 199 A.3d at 497 (emphasis added).

9

about the consequences of remaining silent, Licensee remained silent. Although the trial court found it unclear whether Licensee submitted immediately after Officer Homyak told Licensee that his silence was a refusal or while Officer Homyak was completing the paperwork for a refusal, in either situation the trial court found Licensee said he would provide a blood sample **after Officer Homyak deemed Licensee's silence a refusal.** (FOF ¶ 9.) "[O]nce a licensee refuses chemical testing, the refusal cannot be vitiated by a later assent." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 747 (Pa. Cmwlth. 2013).

As such, we conclude that under these circumstances, and consistent with our precedent, the trial court erred in finding that the Department did not meet its burden of proof. Further, Licensee did not present any evidence to show that his refusal was not knowing or conscious. Therefore, we reverse.

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven J. Meyers                :
                                  :
                                  :
                                  :
              v.                 :   No.  33 C.D. 2022
                                  :
Commonwealth of Pennsylvania,     :
Department of Transportation,       :
Bureau of Driver Licensing,         :
                   Appellant   :

## O R D E R

NOW, March 20, 2024, the Order of the Court of Common Pleas of Cambria County, entered in the above-captioned matter, is **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven J. Meyers                          :
                                          :
              v.                          :        No. 33 C.D. 2022
                                          :        Submitted:  February 3, 2023
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing,               :
              Appellant                   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY SENIOR JUDGE LEAVITT                          FILED:  March 20, 2024


          The Implied Consent Law[1] requires that every licensee arrested for driving under the influence be warned of the consequence of refusing a blood alcohol test.  Specifically, the arresting officer must use the language on the prescribed DL-26 form[2] to warn the licensee that a refusal to consent to a blood test can result in a license revocation.  The officer must then give the licensee a meaningful opportunity to consider the warning and decide whether to consent.  Here, the Court of Common Pleas of Cambria County (trial court) found that the arresting officer acted precipitously in deeming Steven J. Meyers' (Licensee) failure to speak within 30

---

[1] Section 1547(b) of the Vehicle Code, 75 Pa. C.S. §1547(b), is commonly known as the Implied Consent Law.

[2] The Pennsylvania Department of Transportation (PennDOT) has promulgated the DL-26 form, which sets forth the prescribed language of the warning to be given to motorists arrested for driving under the influence of alcohol (DUI) about the penalties for refusing chemical tests.  Police use the DL-26 form to comply with the requirements of Section 1547 of the Vehicle Code during DUI arrests.

seconds of the first reading of the warning as a refusal. I would affirm the trial court and, thus, respectfully dissent from the majority's reversal of the trial court order.

In these cases, PennDOT has the burden of showing that the licensee was offered a meaningful opportunity to comply with the police officer's request that he submit to a chemical test of his blood. *Conrad v. Department of Transportation*, 598 A.2d 336, 343 (Pa. Cmwlth. 1991); *Nardone v. Department of Transportation, Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015) (noting that PennDOT must prove the licensee was given a "meaningful opportunity" or a "reasonable and sufficient opportunity" to comply with chemical testing requirement). The licensee need not "instantaneously" express a willingness to submit to a chemical test upon request. *Nardone*, 130 A.3d at 748. On the other hand, "police officers are not required to spend time either cajoling [a licensee] or waiting for [a licensee] to change [his] mind." *Grogg v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 715, 719 (Pa. Cmwlth. 2013). "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone*, 130 A.3d at 748.

A refusal to submit to a blood test need not be expressly stated by the licensee; rather, the refusal can be inferred from a licensee's overall conduct. In *Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432 (Pa. Cmwlth. 2014), the state trooper twice read the required warning to the licensee, who responded with a request to have his handcuffs removed. We affirmed the trial court's conclusion that the licensee's conduct constituted a refusal, noting that "'anything substantially less than an unqualified, unequivocal assent' to submit to testing constitutes a refusal to do so." *Id*. at 440 (quoting *Department of Transportation v. Renwick*, 669 A.2d 934, 939 (Pa. 1996)). In *Renwick*, 669 A.2d

934, our Supreme Court affirmed the trial court's conclusion that by responding to the arresting officer's repeated readings of the consent form by turning her head away, closing her eyes, and refusing to sign the DL-26 form, the licensee demonstrated a refusal. On the other hand, we have affirmed the trial court's conclusion that a licensee's response to a reading of the DL-26 form with expletives did not constitute a refusal. *Solomon v. Department of Transportation, Bureau of Driver Licensing*, 966 A.2d 640, 643 (Pa. Cmwlth. 2009).

Silence that follows the reading of the DL-26 form can constitute overall conduct that expresses a refusal. In *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 639-40 (Pa. Cmwlth. 2006), the licensee was read the implied consent form twice and read the form to himself; his silence over the span of 12 minutes was deemed a refusal. The same conclusion was reached in *Moody v. Department of Transportation*, *Bureau of Driver Licensing* (Pa. Cmwlth., No. 864 C.D. 2021, filed May 9, 2023) (unreported),[3] where the licensee was twice read the implied consent form over a 5- to 6-minute period; stated that she did not understand the warning; did not respond when asked which part of the warning she did not understand; and remained silent when requested again to take the test. Likewise, in *Rickards v. Department of Transportation*, *Bureau of Driver Licensing* (Pa. Cmwlth., No. 1225 C.D. 2019, filed May 26, 2020) (unreported), the licensee's silence was deemed a refusal after she was read the DL-26 form; read the form herself; and remained silent while the police officer repeatedly asked if she would submit to a chemical test.

---

[3] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Here, Licensee did not turn his head away or close his eyes after Officer Homyak read the DL-26 form; did not request to have his handcuffs removed; and did not swear. After 30 seconds, before Licensee said anything, Officer Homyak informed Licensee that his silence would be considered a refusal. Licensee immediately stated that he would provide a blood sample. While refusal to submit to testing cannot be vitiated by a later assent, *Vora v. Department of Transportation, Bureau of Driver Licensing*, 79 A.3d 743, 747 (Pa. Cmwlth. 2013), Licensee's only statement was that he would comply with the request for chemical testing.

Here, the trial court found that Licensee "made no oral statements or took no physical action confirming his refusal after the DL-26 form had been read in its entirety." Trial Court Op. at 5. The trial court found Licensee's 30 seconds of silence to be "ambiguous," noting that he may "have been thinking about whether to comply or [] to refuse[.]" *Id.* Further, Licensee's only statement after hearing the reading was one of assent. On these facts, the trial court concluded that Licensee did not refuse the request for chemical testing. It reasoned:

> To hold that approximately 30 seconds of silence following the reading of the DL-26 form - *absent something else occurring after the form has been read* - strays dangerously close to holding that a licensee must instantaneously submit to chemical testing upon request.

Trial Court Op. at 5-6 (emphasis in original).

The majority construes the trial court's reasoning to mean "that Officer Homyak needed to do, or wait for Licensee to do, 'something else' before deeming Licensee's silence as a refusal." *Meyers v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 33 C.D. 2022, filed March 20, 2024), slip op. at 9. I disagree. The arresting officer need only respond with the patience required to give the licensee a "meaningful opportunity" to assent to the chemical test.

*Nardone*, 130 A.3d 748. A meaningful opportunity includes the ability to ask questions. *See, e.g.*, *McDonald v. Department of Transportation, Bureau of Driver Licensing*, 708 A.2d 154 (Pa. Cmwlth. 1998). A meaningful opportunity also includes the ability to ponder.

Here, the trial court found, as fact, that Licensee's 30 seconds of silence was "ambiguous" at best and did not express a refusal. Trial Court Op. at 5. This factual finding should not be disturbed on appellate review. *Middletown Township v. Lands of Stone*, 939 A.2d 331, 338 (Pa. 2007). The precedent has uniformly deferred to the trial court's determination on whether a licensee's silence has expressed a refusal. In those cases, the arresting officer made multiple readings of the DL-26 form over periods of time ranging from 6 to 12 minutes, and the licensee's conduct physically demonstrated a refusal. *Broadbelt*, 903 A.2d 636; *Moody* (Pa. Cmwlth., No. 864 C.D. 2021, filed May 9, 2023); *Rickards* (Pa. Cmwlth., No. 1225 C.D. 2019, filed May 26, 2020).

The majority creates, in essence, a "30-second rule" that will require a licensee to give assent within 30 seconds after hearing the warning. Such a rigid rule departs from the well-established principle that these cases require a fact-intensive inquiry into whether the licensee's "*overall conduct demonstrates an unwillingness to assent* to an officer's request for chemical testing." *Nardone*, 130 A.3d at 749 (emphasis added).[4] A 30-second rule sharply limits the scope of the inquiry into a licensee's overall conduct.

---

[4] In *McDonald*, for example, the trial court credited a licensee's testimony that she was confused by the consent form; that she was attempting to sign the consent form when it was taken away by the officer; and that she was willing to provide a blood sample. We affirmed the trial court's decision that it is not a refusal when a licensee delays a decision because of confusion as to her rights but then assents to a chemical test once those rights are clarified. *McDonald*, 708 A.2d at 156.

Our Supreme Court has explained that a licensee need not "instantaneously" submit to a chemical test upon request. *Nardone*, 130 A.3d at 748. The trial court concluded that requiring a licensee to consent within 30 seconds to a single reading of the warning comes "dangerously close to holding that a licensee must instantaneously submit[.]" Trial Court Op. at 6. I agree.

Even where a licensee has declared a refusal to take a blood test, the officer must read the warning and give the licensee a reasonable time to change his mind. I would affirm based on the basis of the well-reasoned opinion of the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita